THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN ERVIN, Defendant-Appellant.

First District (3rd Division)   No. 1—94—1123

Opinion filed December 14, 1994.

Julius Lucius Echeles, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a warrantless entry by the police into defendant John Ervin's former wife's home, he was arrested and charged with possession of cannabis with intent to deliver. The trial court denied defendant's motion to suppress the evidence based on his lack of standing to challenge the warrantless search and seizure by the police. Thereafter defendant was convicted of the charged offense.

On appeal, defendant asserts that he had standing to contest the warrantless police actions and that no exception to the warrant requirement justified the search and seizure.

We find that defendant lacked standing to contest the warrantless search and seizure conducted in the home of his former wife and affirm the denial of defendant's motion to suppress evidence. Absent appropriate standing on the part of defendant, we need not and do not address the second issue regarding the justification of the warrantless search and seizure as an exception to the warrant requirement.

The testimony presented at the evidentiary hearing on defendant's motion to suppress was the sole evidence used in his subsequent stipulated bench trial. Chicago Housing Authority police officers Melvin Jones and Thomas Wiggins testified to the circumstances of defendant's arrest.

Officer Jones testified that on April 4, 1993, he and his partner, Officer Wiggins, were working in uniform at the Altgeld Gardens project. While in their car, an unidentified citizen approached Jones and Wiggins and informed the officers that possible narcotic sales were taking place at a certain address (1105 East 130th Place). After positioning themselves across a field about 150 feet away from the home, the police observed seven to eight people over a 15-minute period of time go to the front door, stand for one to two minutes and leave. Jones testified that someone in the house would come to the door, greet the people and engage in a transaction. The visitors were not allowed entry into the residence. Jones did not observe anything being exchanged.

Following this surveillance, Jones, his partner Wiggins and four other police officers went to the apartment. When Jones was about three to five feet from the door, a woman exited the screen door and stated "Oh, shit. I know why you are here." While the woman held the screen door open, Jones saw defendant about seven to eight feet away sitting alone at the kitchen table and "putting a green leafy substance into a very small manila bag." Jones also noticed a quantity of small envelopes on the table and a large silver pan on the kitchen table although from the door he could not identify the contents of the pan.

Jones had been a police officer for $1\frac{1}{2}$ years and had made at least 12 prior narcotic arrests. On several prior narcotic arrests, he had seen a green leafy substance which he suspected was cannabis. Based on his experience, Jones had seen cannabis in small manila envelopes "all the time." When Jones saw defendant place the green leafy substance in a bag, Jones decided to approach and testified that

the purpose of entering the apartment was to ascertain the nature of the green leafy substance.

The police entered the apartment without a warrant; Jones secured the front room, which was occupied by four people, and Wiggins proceeded to the kitchen area. When the police entered the apartment, defendant placed the silver pan on his lap and Wiggins asked defendant to put the pan back on top of the table. The silver pan contained cannabis.

Officer Thomas Wiggins essentially testified to the same events as recounted by his partner Jones except that Wiggins recalled seeing the visitors enter the apartment during the surveillance while Jones had stated that the visitors had not entered.

Wiggins further testified that the front entrance had two doors: an outside screen door and an interior wooden door. When he and Jones approached the apartment and encountered a woman leaving the apartment, the inside wooden door was left open. When the woman released the screen door, Wiggins "had one foot up on the small step" and had to catch the door with his hand to prevent it from hitting him.

From the doorway, Wiggins observed defendant sitting at the kitchen table approximately 15 feet away, retrieving plant-like material from a silver tray on the kitchen table and placing it in a brown, small envelope. Wiggins also saw a scale sitting on the table and several small paper packets but could not see the contents of the silver pan. After entering the apartment, Wiggins approached defendant, observed defendant attempt to place the pan on his lap underneath the table and then saw the suspect cannabis in the silver pan.

Wiggins had been working at his present job $1^1/_2$ years and had made approximately 25 prior narcotic arrests during which he had seen a green leafy substance which was found to be cannabis and had seen paper packets which were commonly used for packaging narcotics for the purpose of sale.

The trial court found the testimony of the officers to be credible but had some apparent difficulty with determining the existence of exigent circumstances. However, the trial court observed that no evidence was presented to demonstrate that defendant "had any reasonable expectation of privacy to the premises to object to the entry of the premises." At that point in the proceedings, defense counsel asked to reopen his case to allow defendant to testify.

Defendant testified that he lived at 8200 South Ellis although his driver's license and other identification listed his residence at 1105 East 130th, which is the residence of his ex-wife. The total testimony by defendant for purposes of this appeal is as follows:

"Q. What were you [defendant] doing at 1105 East 130th Place?

A. My wife, my ex-wife she was sick and I always go over there once or twice a week to see how she be doing and fix her food.

Q. Had you ever lived there?

A. I lived there in '64, I think it was.

Q. You said you go over there everyday?

A. Not everyday, but most every other day or something like that.

Q. And did you have clothes there?

A. No, not there.

Q. Did you spend nights there?

A. No, not since '64.

Q. Your wife lives there?

A. My ex-wife. We are not together anymore. But she is sick and has been operated on about three times with cancer and everything, and she is still under the doctor's care right now. And that is what my purpose of going back and forth over there. But I go to see her every week and I don't miss a week going to see her."

The State declined to question defendant and argued that defendant had no standing based on his own testimony.

The trial court responded and ruled as follows:

"Right. Your [defendant's] motion to suppress is denied based upon lack of reasonable expectation of privacy of the premises. If the Defendant had a reasonable expectation of privacy my ruling would be the other way."

On appeal, defendant asserts that his status as an invited friend, former husband and provider of food and care to his ex-wife and his frequent presence at the subject premises is more than sufficient to confer upon him a reasonable expectation of privacy in her home and, thus, standing to contest the warrantless police actions.

Defendant relies upon a recent North Dakota Supreme Court opinion which held that a *nonovernight* guest in a person's home has standing to seek suppression of evidence seized from the host's home (*State v. Ackerman* (N.D. 1993), 499 N.W.2d 882), thereby extending the United States Supreme Court's holding that an *overnight* guest in a person's home has standing to seek suppression of evidence seized from the home (*Minnesota v. Olson* (1990), 495 U.S. 91, 109 L. Ed. 2d 85, 110 S. Ct. 1684). By his argument, defendant asks this court to extend standing beyond its current reach under Illinois law.

■ A trial court's ruling on a motion to suppress will not be disturbed on review unless it is manifestly erroneous. (*People v. Adams* (1989), 131 Ill. 2d 387, 400, 546 N.E.2d 561.) In considering a motion to suppress, a court must first determine whether the defendant

had standing to challenge the search and seizure before addressing the merits of the defendant's claim. *People v. Delgado* (1992), 231 Ill. App. 3d 117, 119, 596 N.E.2d 149; *People v. Morrison* (1988), 178 Ill. App. 3d 76, 82, 532 N.E.2d 1077 (the defendant must first show that he had a legitimate expectation of privacy in the area searched).

●2 We recognize that the warrantless entry into a person's home is the chief evil against which the language of the fourth amendment is directed. (*People v. Hassan* (1993), 253 Ill. App. 3d 558, 567, 624 N.E.2d 1330, citing *Payton v. New York* (1980), 445 U.S. 573, 586, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380.) The core of the fourth amendment recognizes and protects the right of persons to be free from unreasonable governmental intrusion while in their own homes. (*People v. Hilgenberg* (1991), 223 Ill. App. 3d 286, 293-94, 585 N.E.2d 180.) The threshold of a home may not be crossed without a warrant, absent exigent circumstances, because whether the seizure of property or person is at issue, the fourth amendment fixes a steadfast boundary line at the entrance of a home. *Hilgenberg*, 223 Ill. App. 3d at 293-94, citing *Payton*, 445 U.S. at 590, 63 L. Ed. 2d at 653, 100 S. Ct. at 1382.

■ The fourth amendment's constitutional safeguards, however, are personal protections that may not be vicariously asserted and thus not every aggrieved defendant can seek to exclude evidence allegedly obtained in violation of the fourth amendment. (*People v. Casas* (1992), 234 Ill. App. 3d 847, 854, 601 N.E.2d 798.) The defendant bears the burden of establishing that he held a reasonable expectation of privacy in the place searched or the property seized. (*Delgado*, 231 Ill. App. 3d at 119.) "A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable." *People v. Taylor* (1993), 245 Ill. App. 3d 602, 610, 614 N.E.2d 1272.

■ To determine whether a reasonable privacy expectation exists, the factors considered include whether the defendant was legitimately present in the area searched; his possessory interest in the area or property seized; prior use of the area searched or property seized; ability to control or exclude others' use of the property; and a subjective expectation of privacy. *Delgado*, 231 Ill. App. 3d at 119, citing *People v. Johnson* (1986), 114 Ill. 2d 170, 191-92, 499 N.E.2d 1355.

■ Overnight guests in private homes (*Olson*, 495 U.S. 91, 109 L. Ed. 2d 85, 110 S. Ct. 1684) and overnight guests in hotel/motel rooms (*People v. Eichelberger* (1982), 91 Ill. 2d 359, 364-65, 438 N.E.2d 140) have a sufficiently legitimate expectation of privacy in the premises to confer standing to challenge a search. The United States Supreme Court in *Olson* reasoned:

"To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. \*\*\*

From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings." *Olson*, 495 U.S. at 98-99, 109 L. Ed. 2d at 94, 110 S. Ct. at 1689.

In Illinois, the storage of personal effects and other indicia of residence have been found sufficient to confer standing on nonovernight boarders. *People v. Johnson* (1992), 237 Ill. App. 3d 860, 605 N.E.2d 98 (a nonovernight guest was held to have standing to challenge the validity of a search warrant where he received telephone calls and stored furniture and tools at the searched residence).

The North Dakota Supreme Court extended *Olson* to confer standing to a nonovernight, party guest who sought to suppress contraband seized in the host's home. *State v. Ackerman* (N.D. 1993), 499 N.W.2d 882.

Illinois courts, however, have repeatedly declined to grant standing for the purposes of contesting a search and seizure to persons who are guests or merely present in someone else's home or on another person's property which is searched. *E.g.*, *People v. Harre* (1994), 263 Ill. App. 3d 447, 636 N.E.2d 23 (a clean-up/maintenance man had no legitimate expectation of privacy in the house on the property where he was cleaning up the grounds and thus had no standing); *Delgado*, 231 Ill. App. 3d at 119-20 (mere status as the sole occupant of the residence at the time of the search is not sufficient to establish a legitimate expectation of privacy); *People v. Bass* (1991), 220 Ill. App. 3d 230, 243, 580 N.E.2d 1274 ("mere presence in the home of a friend at the time of arrest, alone, is insufficient to confer standing"); *People v. Williams* (1989), 186 Ill. App. 3d 467, 471-72, 542 N.E.2d 484 (defendant had no standing to challenge a search of his girlfriend's apartment); *People v. Cohen* (1986), 146 Ill. App. 3d 618, 496 N.E.2d 1231 (social guest in the codefendant's home did not have standing to seek suppression of evidence seized in the home).

●6 While we absolutely appreciate and uphold the fourth amendment's dictate to preserve the sanctity of one's home, we decline defendant's invitation to deviate from existing Illinois case law and to follow the broad pronouncement of the North Dakota Supreme Court. Moreover, to extend the protections of the fourth

148

amendment as advocated by defendant does not preserve the sanctity of one's home but rather indiscriminately opens its doors as a haven to virtually any entrant, with the possible exception of trespassers, no matter how brief or how infrequent or how unwelcome the entrant's stay.

For all the foregoing reasons, we find that defendant lacked standing to contest the search and seizure conducted in his former wife's home and thus affirm the trial court's denial of his motion to suppress the evidence. Since defendant does not have standing, we do not reach the remaining issue concerning the propriety of the warrantless search and seizure.

Affirmed.

RIZZI and CERDA, JJ., concur.