THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EUGENE BROWN *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—93—3430, 1—93—3431 cons.

Opinion filed February 8, 1996.

Thomas C. Gradstrader, of State Appellate Defender's Office, of Mount Prospect, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore Burtzos, and Kalina Tulley, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The defendants, Eugene Brown and Tracy Cooper, were charged by indictment with numerous counts of possession of controlled substances with intent to deliver, criminal fortification of a residence, and armed violence. Prior to trial, the court denied motions by both defendants to suppress evidence recovered in a search of Cooper's apartment. The defendants proceeded to a joint jury trial after which Brown was found guilty on the fortification, possession, and armed violence charges, while Cooper was found guilty of possession and fortification. Their appeals were consolidated, and both now challenge the denial of their suppression motions and the sufficiency of the evidence supporting their convictions.

Prior to trial, the defendants moved to suppress evidence of weapons, currency, and drugs seized in a warrantless search of Cooper's apartment. At the joint suppression hearing, Officer Kevin Friedrich testified that on April 2, 1991, at about 10:30 p.m., he and Officer Michael Landando were conducting narcotics surveillance at an apartment building at 2928 West Warren in Chicago. While in the process of making an unrelated arrest on the first floor, the officers heard gunshots coming from the rear of the building and proceeded in that direction. Friedrich testified that when they arrived, they saw Brown on the second-floor porch with a gun in his hands. The officers pursued Brown but he was able to evade them by fleeing into the second-floor apartment, shown to belong to Cooper. Friedrich testified that when the officers reached the apartment door they heard movement inside and attempted to gain entry. They were unable to do so, however, because the door was fortified with heavy steel and burglar

bars. The officers summoned an additional 8 to 10 officers who arrived on the scene. On the advice of their sergeant, Friedrich and Landando then attempted to procure a search warrant for the premises while the remaining officers remained at the building, securing both the front and rear doors.

Friedrich and Landando were gone from the premises nearly three hours, from about 11:30 p.m. until 2:30 a.m., and spent most of this time attempting unsuccessfully to locate a judge to execute a search warrant. Friedrich testified that they subsequently returned to the scene and knocked on the front and rear doors, announcing their office. Hearing movement inside but receiving no response, the officers then entered the front door using a battering ram.

Friedrich indicated that upon entry, he saw two females and two males sleeping on a bed in the front bedroom. These individuals were taken into custody but were ultimately released uncharged. Friedrich then heard movement over the rear bedroom, and after proceeding to that area, discovered a small square entrance in the ceiling leading to an attic crawl space. Friedrich saw an individual in the crawl space and ordered him to come down, and when he did so, Friedrich recognized him as Brown, the man he had seen holding the gun. Friedrich searched Brown but found neither weapons nor contraband. After the officers restrained Brown in handcuffs, Friedrich proceeded into the attic crawl space and searched it, uncovering firearms and cocaine. Friedrich admitted that the cocaine was contained in brown plastic shopping bags through which it was not possible to see. He also admitted that once Brown had descended from the crawl space he was no longer able to reach or control anything in that area.

Friedrich and Landando next went into the kitchen, where they discovered a steel safe weighing about 100 to 150 pounds behind a microwave oven cart. Looking through two quarter-sized holes in the bottom of the safe, Landando was able to see that it contained wrapped packages and currency. The officers brought the safe to the fire department where it was pried opened and found to contain additional drugs, cash, and a photographic identification card belonging to Cooper.

Cooper testified that she lived in the second-floor apartment; however, it was undisputed that she was not home on the day of the search. Cooper indicated that Brown had been in her apartment since about noon that day because she had asked him to look after it. She admitted that the guns, drugs and money recovered from the search belonged to her.

At trial, Friedrich testified that when they first saw Brown he was standing on the second-floor porch with a gun pointed upward into the air. Friedrich testified that the officers were unable to enter the building through the rear or front doors because both were fortified with heavy steel and also with padlocked iron burglar bars that extended across the front of the doors. The officers later succeeded in opening one of the doors by pounding it 50 to 60 times with a battering ram. Testimony by a surveillance officer established that during the period Friedrich and Landando were out trying to obtain a warrant, no one attempted to leave or enter the second-floor apartment.

Friedrich testified that after arresting Brown, he stood on a chair, climbed partially into the crawl space, and looked around. About five feet from the opening, Friedrich saw what he believed to be the barrel of a rifle, and he asked one of the officers to strike the ceiling with the battering ram so he could be certain. When the officer did this, Friedrich saw the stock of the rifle and a couple of handguns "jump" into the air. Friedrich descended to the ground, and the officers continued striking the ceiling, creating a hole and causing some ammunition to fall through to the floor. They eventually created a hole large enough for several officers to enter and search the crawl space.

The evidence established that inside the crawl space, police recovered 11 guns, ammunition, and near where the weapons had been, about 73 packets of cocaine. From the safe, police recovered several clear plastic bags of cocaine, heroin, and codeine, a wrapped "brick" consisting of a kilogram of nearly pure cocaine, an ankle holster, $5,600 dollars in cash, and a college picture identification and recent billing statement both belonging to defendant Cooper. Evidence of utility and gas company records established that the apartment was leased to Cooper during the time period in question.

Friedrich testified that when he saw Brown in the crawl space, he was not touching or in possession of the bags. Friedrich did not see the bags of drugs until entering the crawl space with the other officers. Friedrich admitted that police never conducted tests to determine whether Brown's or Cooper's fingerprints were on the bags, or whether the weapons found had been recently fired. Friedrich never saw Brown in the area around the safe.

Joe Rokas of the police department testified as an expert on the street value of cocaine and heroin. Regarding the brick of cocaine recovered from the safe, Rokas testified that cocaine packaged in this manner was pure, or uncut, and that it was usually purchased in this form by large-scale drug dealers. Rokas further testified that the tin foil and plastic packets recovered from the ceiling were in the form

used for distribution on the street. Finally, Rokas indicated that it was typical for dealers to have weapons to protect their product, as well as large amounts of cash.

At the close of the State's case, the court granted a directed verdict for Cooper on the armed violence charges. Following arguments, the jury found Brown guilty of 11 counts of armed violence, one count of possession of between 400 and 900 grams of cocaine with intent to deliver, one count of possession of between 100 and 400 grams of cocaine with intent to deliver, and one count each of possession of heroin and codeine, respectively, with intent to deliver. He was also found guilty of criminal fortification of a residence. Cooper was convicted of possession of controlled substances with intent to deliver and criminal fortification of a residence. Brown was sentenced to 14 years' imprisonment for armed violence, 14 years for possession of between 400 and 900 grams of cocaine with intent to deliver, and 3 years for criminal fortification, all to run concurrently.

On appeal, the defendants first contend that the court erred in refusing to suppress the evidence seized from Cooper's apartment because the State failed to prove the warrantless entry was justified by exigent circumstances. The State responds that Brown lacked any privacy interest in the apartment and is thus without standing to challenge the search. Alternatively, and also with regard to Cooper, the State argues that the requisite exigent circumstances were established to justify the warrantless entry.

Initially, the State is correct that Brown lacks standing to contest the search of Cooper's apartment. A defendant may not challenge the validity of a search unless it involves an affront to his personal fourth amendment rights. (*United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547.) In particular, he is without standing to seek suppression of items seized from an apartment unless he proves that he possessed a legitimate expectation of privacy in the areas searched or in the property seized. (*People v. Johnson* (1986), 114 Ill. 2d 170, 191-92, 499 N.E.2d 1355.) Factors used to determine whether a reasonable expectation of privacy exists include whether the defendant was legitimately present in the area searched; his possessory interest in the area or property seized; his prior use of the area searched or property seized; ability to control or exclude others' use of the property; and a subjective expectation of privacy. (*Johnson*, 114 Ill. 2d at 191-92; *People v. Ervin* (1994), 269 Ill. App. 3d 141, 146, 645 N.E.2d 355.) Although standing exists for overnight guests on a premises (see *Minnesota v. Olson* (1990), 495 U.S. 91, 109 L. Ed. 2d 85, 110 S. Ct. 1684; *People v. Olson* (1990), 198 Ill. App. 3d 675, 556 N.E.2d 273), a mere transitory presence on the premises at the time of the

search is insufficient to establish a legitimate expectation of privacy. (*People v. Delgado* (1992), 231 Ill. App. 3d 117, 119-20, 596 N.E.2d 149; *People v. Bass* (1991), 220 Ill. App. 3d 230, 243, 580 N.E.2d 1274.) The trial court's decision on a motion to suppress is not subject to reversal unless it was clearly erroneous. *People v. Williams* (1994), 161 Ill. 2d 1, 26, 641 N.E.2d 296.

■ It is undisputed that Cooper was the sole lessee of the apartment and that she had allowed Brown inside to watch the premises as of noon on the day of the search. However, Brown failed to provide any proof of a proprietary interest in the whole or any portion of the apartment. Specifically, he never indicated how long he intended to stay at the premises that day, how readily accessible it had been to him in the past, or even the frequency of his visits there. Further, Brown presented no evidence that he exercised control or dominion over the premises, such as proof that he had a key, received telephone calls, or stored belongings there. (See *People v. Johnson* (1992), 237 Ill. App. 3d 860, 605 N.E.2d 98.) Thus, it was reasonable to conclude that Brown had merely a transitory presence in the apartment and that he lacked standing to contest the search or the admissibility of the evidence seized.

We next determine whether the evidence should have been suppressed as to Cooper, who was the undisputed resident of the apartment. The initial inquiry in resolving this issue is the propriety of the officers' warrantless entry into her apartment.

■ The Illinois Constitution and the Constitution of the United States prohibit police from making a warrantless, nonexigent entry into a suspect's home to make a routine felony arrest. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371; *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543.) The warrantless entry into a person's home is the "chief evil" that the fourth amendment was meant to prevent, and searches and seizures in this context are "presumptively unreasonable." (*Payton*, 445 U.S. at 586, 63 L. Ed. 2d at 651, 100 S. Ct. at 1380; *People v. Spicer* (1987), 163 Ill. App. 3d 81, 87, 516 N.E.2d 491.) The supreme court has identified factors relevant to determining whether exigent circumstances exist, including that the crime involved was grave, particularly one of violence; the officers' reasonable belief that the suspect was armed; that the arrest occurred swiftly and the officers did not engage in any deliberate or unjustified delay during which they could have secured a warrant; a clear showing of probable cause; the likelihood of flight or destruction of evidence; and that the entry was made peaceably. (*Williams*, 161 Ill. 2d at 26; *People v. Foskey* (1990), 136 Ill. 2d 66, 75, 554 N.E.2d 192; *People v. Patterson* (1993), 267 Ill. App. 3d 933, 642 N.E.2d 866.)

Exigent circumstances are also present where police are in "hot pursuit" of a suspect who flees from a public place into his residence (*United States v. Santana* (1976), 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406), or where the officer has a reasonable basis to believe, based upon knowledge acquired through any of his senses, that the suspect has just committed a crime in the officer's presence. (*People v. Eichelberger* (1982), 91 Ill. 2d 359, 369, 438 N.E.2d 140.) The guiding principle is reasonableness, and each case is evaluated based on the totality of the circumstances known to the officers at the time of the entry. (*People v. Yates* (1983), 98 Ill. 2d 502, 515, 456 N.E.2d 1369; *People v. Greenleaf* (1993), 254 Ill. App. 3d 585, 589, 627 N.E.2d 111.) Where neither the facts nor witness credibility is questioned, the issue of exigent circumstances is a legal one to be reviewed *de novo*. *Foskey*, 136 Ill. 2d at 76.

■ Upon hearing the sound of gunfire in this case, police immediately proceeded in the direction of the shooting and found Brown on Cooper's porch pointing a gun into the air. The officers pursued him, but he escaped into the apartment behind a steel-fortified door that the police were unable to enter. At this point, a successful entry may have been justified under "hot pursuit" because Brown illicitly attempted to thwart an arrest commenced in a public place by entering a private place. See *Santana*, 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406.

However, after their unsuccessful attempt at entry, police set up surveillance covering both exits to the building with officers from three or four additional vehicles. Then, determining that the situation was safe enough to enable them to seek a warrant, Friedrich and Landando delayed nearly three hours before making a second effort to enter the apartment. The State dismisses this delay as "irrelevant" without citation to authority. However, the State's claim of exigent circumstances is seriously undermined by the fact that the officers initially decided it was feasible to take the time to obtain a warrant. As the time between when the police formulate probable cause and when defendant is arrested grows longer, the "exigency" of the situation is unquestionably diminished. *People v. Smith* (1992), 152 Ill. 2d 229, 249, 604 N.E.2d 858.

The existence of probable cause and the recentness of the offense alone are insufficient to justify a warrantless entry in the absence of a need for immediate police action (*Foskey*, 136 Ill. 2d at 77, 79), or unless the suspect poses an "immediate and clear danger" to police or those around him. (*Foskey*, 136 Ill. 2d at 78.) The State failed to demonstrate the need for such action in this case, especially considering that the violent entry occurred at 2:30 a.m. Although Brown was

known to be armed, his conduct in discharging a firearm into the air would amount merely to a violation of a municipal ordinance (see Chicago Municipal Code § 8—4—010(h) (1995)), and cannot be considered grave, especially when compared with offenses typically giving rise to exigent circumstances. (See *Yates*, 98 Ill. 2d 502, 456 N.E.2d 1369; *Abney*, 81 Ill. 2d 159, 407 N.E.2d 543.) Importantly, throughout the entire surveillance period before police entered, Brown, though presumably aware he was being pursued by police, made no attempt at flight or confrontation. Police had all exits to the apartment secured and there was no indication that any other individuals in the apartment were ever placed in danger. (See *Minnesota v. Olson* (1990), 495 U.S. 91, 101, 109 L. Ed. 2d 85, 96, 110 S. Ct. 1684, 1690.) Moreover, at the time of entry, police knew only that there was a man inside with a gun; thus, there was no real concern here that a further delay would lead to the destruction of evidence. In light of these circumstances, we see no reason why the officers could not have maintained the stakeout for the additional period required to procure a warrant. The entry was unjustified, and therefore all evidence seized in the search incident thereto must be suppressed as to Cooper.

Brown next claims he was not proven guilty beyond a reasonable doubt. In reviewing the sufficiency of the evidence, this court determines whether, viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the defendant guilty. *People v. Hendricks* (1990), 137 Ill. 2d 31, 63, 560 N.E.2d 611.

■ In order to sustain a charge of possession of a controlled substance, the State must prove the defendant had knowledge of the presence of an illicit substance and that the substance was in his immediate and exclusive control. (*People v. Frieberg* (1992), 147 Ill. 2d 326, 589 N.E.2d 508.) "Exclusive" control also encompasses control shared with another person. (*People v. Scott* (1987), 152 Ill. App. 3d 868, 871, 505 N.E.2d 42.) Possession may be either actual or constructive; actual possession is established by proof that the defendant exercised some sort of present personal dominion over the substance, such as concealing or attempting to dispose of it (*People v. Alexander* (1990), 202 Ill. App. 3d 20, 24, 559 N.E.2d 567; *Scott*, 152 Ill. App. 3d at 871), whereas constructive possession requires a showing that he had both the intent and capability to maintain control over the substance. (*Scott*, 152 Ill. App. 3d at 871.) Constructive possession must be accompanied by proof that the defendant had some control over the area where the drugs were found. (*People v. Luckett* (1995), 273 Ill. App. 3d 1023, 652 N.E.2d 1342; *People v. Hill* (1988), 169 Ill. App. 3d 901, 524 N.E.2d 604.) A defendant's control over the premises

where the substance was located gives rise to an inference of knowledge and control of the drugs sufficient to sustain a conviction for unlawful possession. (*People v. Adams* (1994), 161 Ill. 2d 333, 345, 641 N.E.2d 514; *People v. Stone* (1993), 244 Ill. App. 3d 881, 614 N.E.2d 293.) Knowledge and possession are factual issues, and the trier of fact's findings on these questions will not be disturbed unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of the defendant's guilt. *Luckett*, 273 Ill. App. 3d 1023, 652 N.E.2d 1342.

■ Brown argues that he lacked knowledge or control of any of the drugs found in the apartment. Regarding the contraband in the crawl space, the evidence was sufficient to prove Brown had constructive possession. While mere proximity to contraband is insufficient to prove possession (*People v. Ray* (1992), 232 Ill. App. 3d 459, 597 N.E.2d 756), where the other circumstantial evidence is sufficiently probative, proof of proximity combined with inferred knowledge of the presence of contraband will support a finding of guilt on charges of possession. *United States v. Laughman* (4th Cir. 1980), 618 F.2d 1067, 1077; see, *e.g., People v. Love* (1991), 209 Ill. App. 3d 816, 568 N.E.2d 192.

Friedrich's testimony showed that although the crawl space extended over several rooms in the apartment, the drugs were located only five feet from where Brown was sitting. Further, they were contained in open shopping bags in the midst of an arsenal of weapons and ammunition that was in plain view of the defendant and readily accessible to him. Finally, the evidence established that Brown likely concealed among these weapons the handgun he held when he fled from police: Friedrich testified that the only guns found in the apartment were in the stockpile in the crawl space, and this pile contained some handguns. Under these circumstances, it is difficult to conceive that Brown was unaware of the presence of the drugs.

The evidence also established that although Brown neither leased nor resided in the apartment, he exercised control over the crawl space at the time period in question. Despite the fact that there apparently were no stairs or ladder leading to the space, Brown was aware of its existence, knew how to climb into it, and was able to obtain a blanket to cover the entrance when police arrived. From these circumstances, we may reasonably infer that Brown had acted to conceal the contraband along with himself and that he therefore had constructive possession of it. Unlike the case of *People v. Ray*, 232 Ill. App. 3d at 462, upon which Brown relies, he was not simply sitting in a living room near the substance when police made a

surprise entry; instead, he was in a secluded part of the house obviously used to secrete things, while aware he was being pursued by police.

Additionally, it may be presumed that Brown had intent to participate in the delivery of the drugs. Expert testimony established that those drugs found among the weapons were packaged for street distribution and that they were in quantities greater than for mere personal consumption. This is sufficient to show that they were intended for delivery. See *People v. Williams* (1994), 267 Ill. App. 3d 870, 642 N.E.2d 814.

■ Brown's conviction for possession of the contraband in the safe, however, was unsubstantiated. Apart from having been present in the apartment for several hours on the day in question, Brown was not shown to have had any further connection to the premises. Furthermore, Friedrich admitted that Brown was never seen in the vicinity of the safe or of the kitchen where it was found. His fingerprints appeared neither on the safe nor on its contents. There was no testimony suggesting he had the combination to the safe or control over its contents. Accordingly, his conviction for possession of the cocaine, heroin, and codeine found in the safe must be reversed.

■ Although Brown does not challenge his convictions for armed violence (720 ILCS 5/33A—2 (West 1992)), those which were based upon his possession of the drugs in the crawl space may stand based upon our decision above. However, those predicated upon the cocaine, heroin and codeine found in the safe must be reversed.

Brown next argues that his conviction for criminal fortification must be reversed. We agree. Criminal fortification requires proof that, with the intent to prevent the lawful entry of a law enforcement officer, the defendant maintains a residence in a fortified condition knowing that such residence or building is used for the manufacture, storage, or delivery of controlled substances. 720 ILCS 5/19—5(a) (West 1992); *People v. Rasmussen* (1992), 233 Ill. App. 3d 352, 598 N.E.2d 1368.

■ As indicated above, there was no evidence in this case that Brown had ever been to Cooper's apartment before April 2, 1991, and no evidence that he was responsible in any manner for its fortification. Thus, his conviction cannot stand.

■ Cooper also challenges her convictions based upon the sufficiency of the evidence. As indicated above, the warrantless entry into her apartment was illegal, and all the evidence seized therein must be suppressed as to her. Without the narcotics, guns, or cash, Cooper could not possibly be convicted of possession or fortification, and her conviction must therefore be reversed.

1000

For the foregoing reasons, we reverse Cooper's conviction on all charges. We affirm Brown's conviction for possession of the cocaine in the crawl space with intent to deliver and for armed violence based upon such possession. We reverse Brown's conviction for possession of the cocaine, heroin and codeine found in the kitchen safe, and for armed violence predicated on such possession. We also reverse Brown's conviction for criminal fortification. We remand Brown's case for resentencing.

No. 1—93—3430, Affirmed in part; reversed in part and remanded.
No. 1—93—3431, Reversed.

CAHILL and S. O'BRIEN, JJ., concur.