First Division

Filed: 5-21-07

No. 1-05-2775

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from the
    )    Circuit Court of
    Plaintiff-Appellee,    )    Cook County.
    )
    v.    )    No. 05 CR 12518
    )
DONALD CARODINE,    )    Honorable
    )    John P. Kirby,
    Defendant-Appellant.    )    Judge Presiding.

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Defendant Donald Carodine was convicted of two counts of possession of a controlled substance following a bench trial. A sentencing hearing was conducted where mitigation and aggravation were presented. The trial court sentenced defendant to 2 concurrent 2-year terms in the Illinois Department of Corrections, with 115 days' credit for time served while awaiting sentencing, and assessed fines and fees consisting of a $5 Spinal Cord Injury Paralysis Cure Research Trust Fund assessment, a $500 controlled substance fine, a $100 trauma fund fine, and a $20 Violent Crime Victims Assistance Fund fine. Defendant filed a motion for a new trial, which was denied. Defendant appeals arguing that (1) the trial court erred by denying his pretrial motion to suppress evidence, (2) the State failed to prove him guilty beyond a reasonable doubt, (3) his conviction should be reversed because the trial court misstated the evidence in its findings, (4) the $5 fee for the Spinal Cord Paralysis Cure Research Trust Fund is unconstitutional, (5) the trial court improperly assessed a $20 Violent Crime Victims Assistance

Fund fine, and (6) the $500 controlled substance fine and the $100 trauma fund fine should be offset by a $5-per-day presentence credit for the 115 days he was incarcerated prior to sentencing.

BACKGROUND

At or around noon on April 26, 2005, Officers Louis Rangel and Alberto Garza set up surveillance in response to an anonymous tip that an African-American male in a red T-shirt and a red hat was selling narcotics at a location on north Monitor Avenue in Chicago. Rangel was designated as the surveillance officer for the operation. Defendant was standing on the street wearing a red T-shirt and a red hat and was visible from Rangel's surveillance point. From his vantage point, Rangel saw an unknown black man approach defendant near Wabansia Avenue between Monitor and Mayfield Avenues, engage in a conversation with defendant and give defendant money. After taking the money, defendant went to the basement entrance of the north Monitor address, a three-unit apartment building, reached into a dryer vent protruding from the exterior wall of the building, removed a bag from which he removed a small item, and returned the bag to the vent. Defendant returned to the man that gave him the money and handed him the small item that he removed from the bag that was in the dryer vent.

Believing that he witnessed a drug transaction, Rangel broke surveillance and gave Garza a description of the buyer. Rangel approached defendant, while Garza tried to locate the buyer, which he was never able to do. After unsuccessfully trying to locate the buyer, Garza returned to where defendant and Rangel were and conducted a field interview of defendant. While Garza interviewed defendant, Rangel went to the building on north Monitor, reached into the vent and

recovered the bag from where defendant removed the item that he gave to the unknown man. The bag contained 9 small bags of folded tinfoil containing a white powdery substance and 17 small bags containing a white rock-like substance. Rangel returned to where Garza and defendant were, placed defendant under arrest, and recovered $184 from him. The officers did not have a search warrant to search the building, which is where defendant resided. Neither officer maintained a visual on the dryer vent from the time they broke surveillance until the time Rangel recovered the narcotics. The officers testified that two or three minutes elapsed between the time they broke surveillance and recovered the narcotics.

The officers inventoried the contents of the bag discovered in the dryer vent in a heat-sealed container. The recovered narcotics, inventoried under number 10522872, tested positive for 1.3 grams of heroin and 1.2 grams of cocaine.

Defendant was charged by information with two counts of possession of a controlled substance with intent to deliver. Defendant filed a pretrial motion to quash his arrest and suppress the evidence retrieved from the dryer vent, arguing that the police officers had conducted a warrantless search because the dryer vent was part of his home. At the hearing to quash arrest and suppress evidence, defendant testified that he lived with his mother in the basement apartment on north Monitor on April 26, 2005, that the dryer vent led into his apartment, and that the drugs were not his. The judge denied defendant's motion finding that the dryer vent was accessible from a common area and therefore that Rangel did not break the threshold of the home by reaching into the vent. In denying defendant's motion, the trial court

relied on the testimony of the two officers and photographs taken of the subject property offered into evidence by the defendant. The trial court stated:

"Officer Rangel has testified *** that he observed the defendant after receiving information that a male black with a red hat and red shirt was selling narcotics, he saw him on the corner of Wabansia and Mayfield.

According to the photographs entered into evidence by the defendant, the building in question is the corner, it's a two-flat with a basement, and there's [an] open back porch area that comes from the second floor down to the first floor and then a few steps down into the basement. As you're going down into that basement, there looks like either a water line coming out of that wall and a vent coming out of that wall.

Officer Garza testifies that after seeing the hand-to-hand transaction his partner, Officer Rangel, informed him of that, they both approached. Officer Garza goes for a field interview of the defendant. Based on what he had seen, he does a protective pat-down search where he finds nothing. At that time Officer Rangel goes back to the area where he saw the defendant go earlier to the area in the basement, going down into that basement into the vent

and remove from that vent a brown paper bag where narcotics are found.

The argument the defendant makes is that the officers were proper until they made that search of that vent. The description [is] that [the] vent is part of the home.

In regards to this, I don't believe that the vent is part of the home. I believe the stairs, stairwell is a common area for all parties. And as you look at this photo, without having any information of where the defendant lives, that could be considered a basement area where both the first and second floor were using.

Based on the testimony of the defendant, though, he lives in that basement area. That still doesn't make that outside wall, and I repeat, that's an outside wall of a building, doesn't make it any less part of that property. Therefore, when the officer saw him go to that vent, place a bag in there, I believe the officers were well in their rights to take a look at that. They did not enter the threshold of the property, they didn't open the door, they looked at something outside the property. Therefore, the motion to quash arrest and suppress evidence will be denied."

The parties proceeded to bench trial, where they stipulated to Rangel's and Garza's testimony, stipulated that "a proper chain of custody was maintained at all times" and also

stipulated to the chemical composition of the recovered narcotics. As noted, the recovered narcotics, inventoried under number 10522872, tested positive for 1.3 grams of heroin and 1.2 grams of cocaine. The inventory number did not refer to the brown paper bag in which the drugs were found. Also, the inventory number was incorrectly referred to as 10522972 in one sentence of the stipulation. The stipulation also stated that the items tested by the forensic scientist contained 17 bags of suspected crack cocaine as opposed to the 9 bags containing a white powdery substance and 17 bags containing a white rock-like substance inventoried by the officers. Despite these discrepancies, the parties stipulated that inventory number 10522872 contained 9 small bags containing folded tinfoil with a white powder and 17 small bags containing a white rock-like substance.

The trial judge found defendant guilty of possession of heroin and cocaine, but did not find that the defendant intended to deliver the narcotics. The trial court sentenced defendant to 2 concurrent 2-year sentences in the Illinois Department of Corrections, with 115 days' credit toward his sentence, and assessed fines and fees, including a $5 Spinal Cord Paralysis Cure Research Trust Fund assessment, a $500 controlled substance assessment, a $100 trauma fund fine, and a $20 Violent Crimes Victims Assistance Fund fine.

ANALYSIS

Defendant argues that the trial court erred by denying his motion to suppress evidence discovered by the police in the dryer vent leading from inside his home to the common area directly outside his home. Specifically, he argues that the police officer's action in retrieving the drugs from the dryer vent violated his right under both the United States and Illinois

6

Constitutions to be free from unreasonable searches. U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6.

It is undisputed that the police did not have a warrant to search the apartment building where defendant resided. It also appears from the record, and the State appears to concede because the State does not argue the point in its brief, that no warrant exception applies to this case. Accordingly, the disposition of this issue turns on the answer to whether defendant had a reasonable expectation of privacy to the dryer vent that led from inside his apartment to the exterior wall of the apartment. In other words, the issue is whether the officer's action in opening and reaching inside the dryer vent constituted a "search" for fourth amendment purposes. U.S. Const., amend. IV.

As noted, the trial court denied defendant's motion to suppress the evidence, finding that defendant did not have a reasonable expectation of privacy to the dryer vent because the dryer vent protruded from the exterior wall of the building and was accessible from the stairway of the building, which the trial court found to be common property, not part of defendant's private residence.

To prevail on a motion to suppress evidence at the trial level, the defendant must establish that the search and seizure was unreasonable. *People v. Neal*, 109 Ill. 2d 216, 218 (1985). As a general rule, suppression motions raise mixed questions of law and fact, and the trial court's ruling will be reversed on appeal only if the ruling is found manifestly erroneous. *People v. Anthony*, 198 Ill. 2d 194, 200-01 (2001). However, where, as here, the parties do not contest the facts or the credibility of the witnesses, the court reviews *de novo* the ultimate legal

question of whether the evidence should have been suppressed. *Anthony*, 198 Ill. 2d at 200-01; *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001).

The fourth amendment to the United States Constitution protects people from unreasonable searches and seizures, as does the Illinois Constitution's search and seizure provision. *People v. Pitman*, 211 Ill. 2d 502, 513 (2004). The fourth amendment protects people, not places. *Katz v. United States*, 389 U.S. 347, 351, 19 L. Ed. 2d 576, 581, 88 S. Ct. 507, 511 (1967). A defendant who objects to the search of a particular area must prove a "legitimate expectation of privacy" in the area searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 65 L. Ed. 2d 633, 641, 100 S. Ct. 2556, 2561 (1980). A "search" for purposes of the fourth amendment occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. *United States v. Jacobson*, 466 U.S. 109, 113, 80 L. Ed. 2d 85, 94, 104 S. Ct. 1652, 1656 (1984). Accordingly, the inquiry as to whether a "search" has occurred for the purposes of the fourth amendment involves two questions: "(1) whether the individual, by his conduct, has exhibited a subjective expectation of privacy; and (2) whether such an expectation is justifiable under the circumstances." *People v. Juarbe*, 318 Ill. App. 3d 1040, 1050 (2001).

Applying this analysis, defendant exhibited a subjective expectation of privacy as to the brown paper bag and the dryer vent. Defendant placed the narcotics in an opaque bag and concealed the bag from public view by hiding it in the dryer vent. By concealing the narcotics within the opaque paper bag and hiding the paper bag in the dryer vent, defendant exhibited a subjective expectation that the narcotics would remain private.

Having determined that defendant exhibited a subjective expectation of privacy to the dryer vent, we must now consider whether the defendant's expectation is "one that society is prepared to recognize as reasonable." *People v. Neal*, 109 Ill. 2d 216, 222 (1985). Factors relevant in determining whether a reasonable privacy expectation exists include (1) whether defendant was legitimately present in the area searched, (2) his possessory interest in the area searched or property seized, (3) prior use of the area searched or property seized, (4) ability to control or exclude others' use of the property, (5) and a subjective expectation of privacy in the property. *People v. Johnson*, 114 Ill. 2d 170, 191-92 (1986).

Guided by the foregoing factors, we conclude that defendant failed to carry his burden of establishing that he held a reasonable expectation of privacy in the dryer vent. *Neal*, 109 Ill. 2d at 218. Defendant had no possessory interest in the area searched. Although defendant leased the apartment in which he and his mother resided, he had no possessory interest to the common area from which the officer reached because the inhabitants of two other units had access to the common area. Defendant had no possessory interest in the exterior wall outside of his apartment and no possessory interest to the dryer vent. Although the dryer vent was used exclusively by the basement apartment, which the defendant inhabited with his mother, the dryer vent was accessible to the landlord, who was responsible for the maintenance of the exterior of the building, and other members of the general public including deliverymen, door-to-door salesmen, etc. Defendant did not have the ability to control or exclude others' use of the property. He had no ability to exclude others from the common property from which the officer reached, had no

ability to exclude others from the exterior wall of the building, and had no ability to exclude others from the dryer vent.

Notwithstanding the foregoing, defendant argues that he had a reasonable expectation of privacy in the dryer vent because it led to the inside of his apartment. The fact that the dryer vent leads to the inside of defendant's apartment is outweighed by the more persuasive fact that the dryer vent is accessible to the outside world from the exterior wall of the building.

Defendant also relies on *People v. Payton*, 317 Ill. App. 3d 909 (2000), in support of his contention that he had a reasonable expectation of privacy to the dryer vent because the defendant in *Payton* had a reasonable expectation of privacy to the inside of his family's barbeque grill situated on his family's front porch. The reasoning of *Payton* rests on the proposition that society would not condone an average person opening and inspecting the interior of one's barbeque grill that is situated on one's real property. *Payton*, 317 Ill. App. 3d at 913 ("It is hard to imagine a member of our society not being surprised, and even defensive, upon discovering an uninvited person on his porch lifting the lid from his family's barbeque grill and inspecting its interior"). However, *Payton* is distinguishable from the case at bar. Applying the five-factor test enunciated in *Johnson*, the defendant in *Payton* had a possessory interest in the barbeque grill, as the barbeque grill was personal property owned by the defendant's family. By virtue of the ownership of the barbeque grill, the defendant also had a right to exclude all others from using the grill. *Payton,* therefore, is unlike the case at bar, where we have already determined that defendant did not have a possessory interest or the ability to exclude others from the vent.

Furthermore, it has been held that where hallways and other common areas of a building are readily accessible to members of the public, that is, where nonresidents without a key can freely enter the common areas of the building, a law enforcement officer or other governmental agent does not conduct a "search" when he enters those areas of the building. *People v. Smith*, 152 Ill. 2d 229, 245 (1992) (police officers did not conduct a "search" where they entered an apartment building through an unlocked back door accessible to other tenants, the landlord, social guests and other invitees), citing *Commonwealth v. Hall*, 366 Mass. 790, 794, 323 N.E.2d 319, 322 (1975) (expectation of privacy diminished in common areas of apartment building). We find that defendant did not have an objective expectation of privacy to the dryer vent because the dryer vent was located in a common area where other tenants of the building, the landlord, delivery persons, door-to-door salesmen and other members of the public had access. Therefore, the officer's activity in opening and reaching inside the dryer vent was not a "search" for fourth amendment purposes.

Defendant also contends that the State failed to prove him guilty beyond a reasonable doubt because the two officers conducting surveillance did not continuously monitor the dryer vent from the time they broke surveillance to the time Officer Rangel recovered the narcotics from the vent. Specifically, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because the officers lost sight of the dryer vent for about two or three minutes, thus failing to prove that the contents stored in the dryer vent were not tampered with during that period of time.

No. 1-05-2775

The critical inquiry on review of a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). Once defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that, upon judicial review, all of the evidence is to be considered in the light most favorable to the prosecution. *People v. Migliore*, 170 Ill. App. 3d 581 (1988). We will not set aside a conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *People v. Cox*, 195 Ill. 2d 378, 387 (2001).

To sustain a charge of possession of a controlled substance, the State must prove the defendant had knowledge of the presence of an illicit substance and that the substance was in his immediate and exclusive control. *People v. Frieberg*, 147 Ill. 2d 326, 360 (1992). Possession may be actual or constructive. *People v. Macias*, 299 Ill. App. 3d 480, 484 (1998). A defendant's possession is actual when he exercises "present and personal dominion over the substance," by acts such as hiding or trying to dispose of the item. *People v. Brown*, 277 Ill. App. 3d 989, 997 (1996). He exercises constructive possession when he has the "intent and capability to maintain control and dominion" over the item but not immediate personal control of it. *Frieberg*, 147 Ill. 2d at 361. "Knowledge and possession are factual issues, and the trier of fact's findings on these questions will not be disturbed unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of the defendant's guilt." *People v. Brown*, 277 Ill. App. 3d 989, 998 (1996).

12

In the case at bar, defendant spoke to an unknown male who gave defendant currency and then proceeded to the dryer vent, where he was observed by Officer Rangel removing a brown paper bag and removing a small item that he tendered to the man who gave him money. Upon witnessing the drug transaction, the police officers broke surveillance, unsuccessfully attempted to locate the buyer, and retrieved the brown paper bag from the dryer vent within a relatively short period of time. Viewing the evidence in the light most favorable to the State, a reasonable trier of fact could have found defendant guilty of possession of a controlled substance because it is highly unlikely that anyone tampered with the contents of the brown paper bag in the two to three minutes that the officers lost sight of the dryer vent.

Furthermore, the trier of fact could have found defendant guilty of actual possession of a controlled substance beyond a reasonable doubt because defendant exercised "present and personal dominion over the substance," by hiding the items in the brown paper bag. *People v. Brown*, 277 Ill. App. 3d 989, 997 (1996). Officer Rangel observed defendant remove and return the brown paper bag containing narcotics to the dryer vent. The act of concealing the drugs inside the brown paper bag was sufficient to convict defendant of actual possession of a controlled substance beyond a reasonable doubt.

The State also proved defendant guilty of constructive possession of a controlled substance beyond a reasonable doubt. "Where narcotics are found on premises under the defendant's control, it may be inferred that he had the requisite knowledge and possession, absent other facts and circumstances [that] might leave a reasonable doubt as to [his] guilt." *Frieberg*, 147 Ill. 2d at 361. Here, the drugs were found in the dryer vent, which defendant has already

13

conceded was under his exclusive control. A reasonable trier of fact could have convicted defendant of constructive knowledge of a controlled substance because the narcotics were discovered in an area that defendant has already argued was under his control. However, because the drugs were located in a common area, they actually were only under his control when he was present because after he would leave the area, his control would cease. Defendant did not offer any evidence that the area where the drugs were found was tampered with or was under the control of another to rebut the presumption that defendant had constructive knowledge of a controlled substance. Defendant merely speculates that someone might have tampered with the contents of the paper bag because the officers lost sight of the dryer vent for two to three minutes from the time that defendant was seen removing and returning the drugs to the dryer vent and the time the officers discovered the drugs. Accordingly, we find defendant's argument not persuasive.

Defendant next contends that his conviction for possession of heroin must be reversed because the State failed to prove a sufficient chain of custody of the contents of the brown paper bag. Specifically, the defendant contends that the State failed to prove that the contents of the bag recovered by the officers from the dryer vent were the same items tested by the forensic scientist because (1) one sentence of the stipulation incorrectly referred to inventory number 10522972 rather than inventory number 10522872 and (2) the description of the items tested by the forensic scientist failed to mention the 9 bags of a white powdery substance inventoried by Rangel along with the 17 bags containing a white rock-like substance.

The State cites *People v. Woods*, 214 Ill. 2d 455 (2005), for the proposition that defendant is precluded from raising the chain of custody issue on appeal because defendant stipulated that a proper chain of custody was maintained at all times.

Defendant responds by stating that *Woods* is not controlling in this case. Defendant states that *Woods* contemplated the situation where there could be a complete breakdown in the chain of custody thus enabling a defendant to raise the issue for the first time on appeal despite a stipulation at trial. We find *Woods* controlling and find that this case does not present the rare situation contemplated by *Woods* where a complete breakdown in the chain of custody occurred.

In cases where a defendant is accused of possession of a controlled substance, the State is required to establish a chain of custody that is sufficiently complete to make it improbable that the evidence has been tampered with or accidentally substituted. *Woods*, 214 Ill. 2d at 467. "The State must show that the police took reasonable protective measures to ensure that the substance recovered from the defendant was the same substance tested by the forensic chemist." *Woods*, 214 Ill. 2d at 467. " 'Once the State has established the probability that the evidence was not compromised, and unless the defendant shows actual evidence of tampering or substitution, deficiencies in the chain of custody go to the weight, not admissibility, of the evidence.' " *Woods*, 214 Ill. 2d at 467, quoting *People v. Bynum*, 257 Ill. App. 3d 502, 510 (1994). The burden then shifts to defendant to show actual tampering, alteration or substitution. *Woods*, 214 Ill. 2d at 468.

This case does not present that rare situation where a complete breakdown in the chain of custody occurred. The officers inventoried the contents of the bag found inside the dryer vent

under inventory number 10522872 in a heat-sealed container. The forensic scientist tested inventory number 10522872 and found that the contents tested positive for 1.3 grams of heroin and 1.2 grams of cocaine. The State satisfied its burden by showing that the police took reasonable protective measures to ensure that the substance recovered from the defendant was the same substance tested by the forensic scientist. *Woods*, 214 Ill. 2d at 467. Once the State established the probability that the evidence was not compromised, and because defendant did not show actual evidence of tampering or substitution, the deficiencies in the chain of custody went to the weight, not admissibility, of the evidence. *Woods*, 214 Ill. 2d at 467.

Furthermore, defendant waived the necessity of proof of chain of custody by entering into a stipulation with respect to the evidence. *Woods*, 214 Ill. 2d at 468. A stipulation is an agreement between litigants or their attorneys with respect to an issue before the court. *Woods*, 214 Ill. 2d at 468. Stipulations are favored by the courts because " ' "they tend to promote disposition of cases, simplification of issues[,] and the saving of expense to litigants." ' [citations.]" *Woods*, 214 Ill. 2d at 468. "Generally speaking, a defendant is precluded from attacking or otherwise contradicting any facts to which he or she stipulated." *Woods*, 214 Ill. 2d at 469.

Our Illinois Supreme Court's reasoning in *Woods* was that a defendant should not be allowed an opportunity to challenge the chain of custody for the first time on appeal where the defendant failed to specifically object to chain of custody at trial and deprived the State of the opportunity to correct any deficiency in the foundational proof at the trial level. *Woods*, 214 Ill. 2d at 470. The Court's reasoning is applicable here, where, as in *Woods*, the parties proceeded

by way of stipulation. *Woods*, 214 Ill. 2d at 473. Not only did defendant not challenge the chain of custody at trial but he also took part in its being found admissible into evidence, by agreeing to stipulate to the testimony of the forensic scientist and agreeing to stipulate that "a proper chain of custody was maintained at all times." By stipulating to the scientist's report and not raising the chain of custody issue at trial, defendant placed the State in a position of believing that the sufficiency of the chain of custody was not at issue in this case. Therefore, we find that defendant is precluded from arguing that the chain of custody was insufficient for the first time on appeal because defendant stipulated to chain of custody at trial thus depriving the State of the opportunity to correct any deficiency. *Woods*, 214 Ill. 2d at 473.

Defendant then argues that his conviction should be reversed because the trial court's findings demonstrate that the trial court did not recall the evidence in the case.

Defendant cites *People v. Bowie*, 36 Ill. App. 3d 177, 179 (1976), and *People v. Mitchell*, 152 Ill. 2d 274, 321 (1992), for the proposition that a judgment should be reversed if a trial judge does not recall facts that are in evidence and does not consider the crux of the defense when entering judgment.

In *Bowie*, this court reversed the judgment of the trial court because there was affirmative evidence in the record demonstrating that the trial judge had forgotten defendant's testimony. *Bowie*, 36 Ill. App. 3d at 179. The defendant was on trial for battery and resisting a police officer. *Bowie*, 36 Ill. App. 3d at 177. At trial the defendant testified that the officer had hit him first in the head, resulting in bleeding. *Bowie*, 36 Ill. App. 3d at 180. The officer testified that it was the defendant that struck first. *Bowie*, 36 Ill. App. 3d at 179. In his closing argument,

17

defense counsel noted the conflict of evidence regarding who struck whom first and further noted the defendant's testimony that he bled from an injury to his head. *Bowie*, 36 Ill. App. 3d at 179-80. The trial court interrupted defense counsel and stated there was no such testimony and struck the argument from the record. *Bowie*, 36 Ill. App. 3d at 180.

In *Mitchell*, our Illinois Supreme Court reversed the judgment of the trial court because, as in *Bowie*, the trial court did not remember the crux of the defense when entering judgment. *Mitchell*, 152 Ill. 2d at 321. The defendant was on trial for two counts of first degree murder. *Mitchell*, 152 Ill. 2d at 281. After his arrest, the defendant confessed to the murders. *Mitchell*, 152 Ill. 2d at 321. The defendant moved to suppress his confession, arguing that he had been illegally seized in violation of the fourth and fourteenth amendments because the police had no probable cause to arrest him and because he was not free to leave the police's questioning. *Mitchell*, 152 Ill. 2d at 321. The defendant testified at the suppression hearing that the police (1) refused to let him go back into his house to obtain warmer clothing, (2) told him he could not leave the police department, and (3) would not let him leave the county building. *Mitchell*, 152 Ill. 2d at 321. At the suppression hearing, defense counsel argued that the defendant was not free to leave the police interrogation, and noted that the defendant desired to go back home to put on warmer clothing, but the officers refused to allow him to do so. *Mitchell*, 152 Ill. 2d at 307. The trial court denied the motion to suppress and stated, "There was no testimony that I recall that said the defendant at any time said he felt he could not leave *** or that he asked whether he could leave and was denied that permission." *Mitchell*, 152 Ill. 2d at 307.

Both *Bowie* and *Mitchell* are distinguishable from the case at bar. The record in both cases cited by defendant affirmatively showed that the trial judges did not recall testimony and did not consider the crux of the defenses. In the case at bar, the trial court stated "the officers further testified that Officer Rangel went to that same area, nobody else went to that area in the three minutes, I believe he said that he had, from the time they broke their surveillance to the time he got there, and that he recovered a brown paper bag inside with baggies containing suspect narcotics." This statement clearly reflects that the trial court recalled the testimony of Rangel and that the court was drawing a conclusion by inferring that it was unlikely that anyone interfered with the dryer vent because the elapsed time from when the officers broke surveillance and the time Rangel recovered the narcotics was minimal. Furthermore, defense counsel did not utilize the fact that the officers had lost sight of the dryer vent for two to three minutes to establish a defense theory that someone might have interfered with the dryer vent prior to the discovery of the drugs. Since defense counsel did not proceed on a theory of interference with the contents of the dryer vent, defendant cannot satisfy the requirements of *Bowie* and *Mitchell*, that a judgment should be reversed if a trial judge does not recall important facts that are in evidence *and does not consider the crux of the defense when entering judgment.*

Defendant then argues that the imposition of the $5 Spinal Cord Injury Paralysis Cure Research Trust Fund fine violated his due process rights. 730 ILCS 5/5-9-1.1(c) (West 2004). Our Illinois Supreme Court rejected the same argument in *People v. Jones*, 223 Ill. 2d 569 (2006), and found the $5 fine constitutional. Accordingly, we find defendant's argument not persuasive.

19

Defendant also contends that the trial court erred in imposing a $20 fine for the Violent Crime Victims Assistance Fund. 725 ILCS 240/10(c)(2) (West 2004). We agree. The plain language of the statute states that this fine may be imposed only if no other fine is imposed. 725 ILCS 240/10(c)(2) (West 2004). Here, the court also imposed a $500 controlled substance assessment (720 ILCS 570/411.2 (West 2004)), which our Illinois Supreme Court has determined is a fine. *Jones*, 223 Ill. 2d at 592. Since the $500 fine was properly imposed, we find the additional $20 penalty improper.

Defendant then argues that he is entitled to a $5-per-day credit toward the $500 controlled substance assessment and the $100 trauma fund charge. We agree. Our Illinois Supreme Court has determined that both the controlled substance assessment (720 ILCS 570/411.2 (West 2004)), and the trauma fund charge (730 ILCS 5/5-9-1.1(b) (West 2004)) are fines that are subject to the mandatory credit of $5 for each day that the defendant was incarcerated while awaiting sentencing. 725 ILCS 5/110-14(a) (West 2004). Accordingly, because defendant was incarcerated 115 days while awaiting sentencing, he is entitled to a $575 credit toward the $600 in fines.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County as modified by this opinion. The trial court did not err by denying defendant's motion to suppress the evidence recovered from the dryer vent because defendant did not have a reasonable expectation of privacy to the dryer vent. The State proved defendant guilty beyond a reasonable doubt of possession of a controlled substance because it is highly unlikely that anyone tampered

with the contents of the dryer vent between the time the officers broke surveillance and the time the officers recovered the narcotics from the vent. Defendant is precluded from arguing insufficiency of the chain of custody because defendant stipulated that a proper chain of custody was maintained at all times thus depriving the State of the opportunity to correct any deficiencies at the trial level. The imposition of the $5 Spinal Cord Injury Paralysis Cure Research Trust Fund fine was proper. The imposition of the $20 Violent Crime Victims Assistance Fund fine was improper because defendant was already properly fined $500 under the controlled substance assessment. Defendant is entitled to a $575 credit toward the $500 controlled substance assessment and the $100 trauma fund charge.

Affirmed as modified.

CAHILL and GARCIA, JJ., concur.