THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM LAWTON *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—90—1678, 1—90—1679 cons.

Opinion filed September 9, 1993.

Michael J. Pelletier and Nan Ellen Foley, both of State Appellate Defender's Office, of Chicago, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Following simultaneous bench trials, the defendants William Lawton and Vincent Johnson were convicted of possession of more than 15 grams of cocaine with intent to deliver and sentenced to six-year prison terms. Both defendants contend on appeal that the State failed to prove they constructively possessed the drugs or, alternatively, that the State failed to prove they possessed more than 15 grams of cocaine. Defendant Johnson also contends the court erred in finding him guilty in his absence where the record fails to show he was properly admonished of the possibility of a trial *in absentia*. We affirm.

At trial, State Police officer David Palmer testified that on February 23, 1988, he obtained a search warrant for a second-floor apartment at Route 30 and Seeley Road in Ford Heights based on information that a "mail slot" cocaine operation was being conducted there. Two days later, Palmer and his partner, Officer Eric Echols, went to that address. Palmer stayed in his car while Echols went inside, put four marked $10 bills into the mail slot and received packets of cocaine in return. After assembling the members of the raiding team, Palmer, Echols and two other officers returned to the apartment. According to Palmer, most of the apartments on the second floor were vacant. The apartment in question, however, was locked with a deadbolt.

After knocking and announcing their office, the police used a sledgehammer to break into the apartment. Palmer testified that as he entered, he heard the barking of a police dog stationed outside. Although it was a very cold February day, an apartment window was wide open. One of the officers climbed out of the window onto the roof of an attached garage and found the defendants. Defendant Lawton was wearing a short-sleeve shirt and was not wearing shoes.

Defendant Johnson was wearing a sweater but no jacket. The defendants were placed under arrest and given *Miranda* warnings.

At first the defendants denied they had been in the apartment, but subsequently admitted their jackets and Lawton's shoes were in the apartment. They then stated they were visiting a friend whose name they could not recall. When asked who owned the key left in the inside deadbolt lock, the defendants replied in unison that it was their key. Palmer then performed a cobalt thiocyanate field test on the hands of both defendants. The test was positive for the possible presence of cocaine.

Palmer testified the apartment consisted of two small, sparsely furnished rooms. The officers found 62 packets of a substance later established to be cocaine on a small table in one of the rooms. There was a triple-beam scale holding a loose, powdery white substance on top of the television set. The officers also found a clear plastic bag containing cocaine in the closet ceiling and $689 in cash on top of a small table. The cash included the marked bills used by Officer Nichols to purchase cocaine.

On cross-examination Palmer testified that he had never seen either defendant before the raid, did not know who owned the building, and could not link either defendant to the apartment through utility or rent receipts.

Special agent Patricia Jordan testified she entered the building shortly after Palmer. She stated the other apartments on the second floor were abandoned and the apartment which the officers raided contained very little furniture. Jordan testified the apartment had no bathroom and there were jars of what appeared to be urine in the refrigerator. There were no clothes in the closet, and a sign taped to the back of the apartment door read, "All Rock, 2 Grams, One Dollar."

A forensic chemist testified the substance found in the closet ceiling was cocaine and weighed 28.9 grams. The weight of the rest of the cocaine found in the apartment totalled 21 grams. The chemist testified he did not test each of the small packets, but assembled them into seven groups of seven packets and one group of five packets. He then tested some powder from each group. All tests were positive for cocaine.

The defendants appeared at a bond hearing the day after their arrest. The court released both defendants on their own recognizance and stated: "You understand, Gentlemen, when you don't come back to court that you will waive all your rights to trial on these charges." Both defendants said they understood. The charges filed on that date

were nol-prossed, and the State later reinstated the charges. The transcripts of the arraignment and subsequent proceedings fail to show Johnson was admonished about a trial *in absentia*.

Both defendants were present at their trials. After closing arguments, the trial judge said he wished to review the evidence because the trial took place over a number of days and he would render his decision on a subsequent date. Defendant Johnson was not present in court on the date of the judge's ruling; his attorney was present. The court summarized the evidence and found both defendants guilty as charged. Both Johnson and Lawton were present at the later sentencing hearing.

Both defendants contend on appeal the State failed to prove beyond a reasonable doubt that they constructively possessed the narcotics found in the apartment. Their argument in attacking the sufficiency of the evidence is based primarily on the State's failure to prove residency in the apartment through such evidence as rent receipts or utility bills.

To establish the offense of unlawful possession of a controlled substance with intent to deliver, the State must prove, among other things, that the defendant knew of the presence of the narcotics and that the narcotics were in the defendant's immediate and exclusive control. (*People v. Marshall* (1988), 165 Ill. App. 3d 968, 976, 521 N.E.2d 538.) Possession may be actual or constructive. (*People v. Frieberg* (1992), 147 Ill. 2d 326, 361, 589 N.E.2d 508.) Drugs found on premises controlled by the defendant give rise to an inference that he knowingly possessed the drugs. (*Frieberg*, 147 Ill. 2d at 361.) This inference alone may support a conviction where there are no other facts or circumstances creating a reasonable doubt of guilt. *Frieberg*, 147 Ill. 2d at 361.

■■ One way to prove the necessary control over the premises is to show the defendant lived there. (*People v. Nettles* (1961), 23 Ill. 2d 306, 308, 178 N.E.2d 361.) As our supreme court observed in *Nettles*, "[h]uman experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters." (*Nettles*, 23 Ill. 2d at 308.) Proof of residency in the form of rent receipts, utility bills and clothing in closets is relevant to show the defendant lived on the premises and therefore controlled them. (*People v. Morrison* (1988), 178 Ill. App. 3d 76, 91, 532 N.E.2d 1077.) However, where the evidence shows the premises are not being used primarily as a residence but instead as a center for the packaging and distribution of drugs, proof of residency has little if any relevance to the issue of

control. See *People v. Bond* (1990), 205 Ill. App. 3d 515, 517, 563 N.E.2d 1107.

In *People v. Bond* (1990), 205 Ill. App. 3d 515, 563 N.E.2d 1107, the defendant argued the evidence was insufficient to support his conviction for possession of a controlled substance with intent to deliver because the State failed to prove he controlled the apartment where the drugs were found. The evidence showed that although the defendant was not in the apartment at the time of the raid, the police found a key to the apartment door in the defendant's car and the defendant's fingerprint on a bottle in the apartment containing a substance used to dilute cocaine. Also, a triple-beam scale in the apartment was set at 13.7 grams, the exact weight of a bag of cocaine found in the defendant's car. The court found the evidence sufficient to prove the defendant controlled the premises. The court observed: "[t]he apartment in question contained no food, no clothes, no pots or pans, and little furniture. As the State argues, this was no one's residence; instead, it was a 'drug house,' premises used by defendant for his business of packaging and selling cocaine." *Bond*, 205 Ill. App. 3d at 517.

■ Here, the evidence showed the apartment contained very little furniture, no bathroom, no clothing in the closets and that other apartments on the floor were vacant. As in *Bond*, the trial court could have concluded the apartment was not used as a residence but rather as a drug house for the packaging and selling of cocaine. Under these circumstances, the lack of evidence that the defendants occupied the apartment as a residence is not fatal to a finding that they controlled the premises.

The evidence did show the apartment door was locked, the defendants admitted owning the key, and cocaine packaged for distribution was in plain view in the apartment. The police found the defendants inappropriately dressed for the weather, on the roof of an attached garage, and a field test showed the possible presence of cocaine on their hands. We believe the evidence seen in a light most favorable to the prosecution was sufficient to establish that the defendants had both control over the apartment where the drugs were found and knowledge that the narcotics were present.

■ Alternatively, the defendants argue the evidence establishes only constructive possession of the cocaine found in plain view and that, excluding an amount which the defendants claim was tainted by improper testing, the total weight of the cocaine found in plain view was less than 15 grams. We find little merit to this argument. Where narcotics are found on premises under the defendant's control, the requisite knowledge and possession may be inferred. (*People v.*

*Frieberg* (1992), 147 Ill. 2d 326, 361, 589 N.E.2d 508.) So we believe the 28.9 grams of cocaine found in the closet ceiling were properly included in the weight of the cocaine charged in the indictment.

■ Defendant Johnson contends he is entitled to a new trial because the court found him guilty *in absentia* without first admonishing him that this was possible. He argues that although he was admonished on the day after his arrest, the admonition was ineffective because the original charges were nol-prossed and later reinstated.

Section 113—4(e) of the Code of Criminal Procedure of 1963 provides:

> "If a defendant pleads not guilty, the court shall advise him at that time or at any later court date on which he is present that if he escapes from custody or is released on bond and fails to appear in court when required by the court that his failure to appear would constitute a waiver of his right to confront the witnesses against him and trial could proceed in his absence." (Ill. Rev. Stat. 1991, ch. 38, par. 113—4(e).)

The section 113—4(e) arraignment warning informs defendants of the consequences they face if they fail to appear for subsequent court dates. Its purpose is to insure that a trial *in absentia* is not held unless the defendant validly waives his right to be present at trial and to confront the witnesses against him. (*People v. Green* (1989), 190 Ill. App. 3d 271, 273, 546 N.E.2d 648.) Failure to properly admonish the defendant requires reversal of a conviction obtained *in absentia,* even when the defendant flees after trial has begun. *People v. Partee* (1988), 125 Ill. 2d 24, 530 N.E.2d 460.

Defendant Johnson was present at his trial and had the opportunity to confront the witnesses against him. The unfairness the statute was designed to prevent did not occur. Johnson seeks to extend the protection afforded by section 113—4(e) to post-trial proceedings, specifically the judgment of conviction. He cites *People v. Thomas* (1991), 216 Ill. App. 3d 405, 576 N.E.2d 352, in support of his contention. The court in *Thomas* concluded that it was error to sentence the defendant *in absentia* where he was not given the section 113—4(e) admonition. In doing so, the court acknowledged that the language of section 113—4(e) does not expressly require the court to advise a defendant of the possibility of being sentenced *in absentia.* We believe *Thomas* is distinguishable and inapplicable to the case before us. The court in *Thomas* gave no admonition and sentenced the defendant *in absentia.* Here, the court warned the defendants that they would waive their rights if they did not appear. Furthermore, the defendant was present for his entire trial and sentencing hearing.

150

The judgments of the circuit court are affirmed. Pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, we grant the State's request for $50 in costs for defending this appeal and incorporate it as part of our judgment.

Affirmed.

JOHNSON and HOFFMAN, JJ., concur.