*In re* K.A., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. K.A., Respondent-Appellant).

Second District    No. 2—95—0222

Opinion filed July 18, 1997.

G. Joseph Weller and Bonnie J. Bondavalli, both of State Appellate Defender's Office, of Elgin, and Lawrence D. Wechter, of Batavia, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert M. Podlasek, of Chicago, for the People.

JUSTICE COLWELL delivered the opinion of the court:

The State filed a second supplemental delinquency petition against the respondent, K.A., seeking to have him adjudicated a delinquent minor and made a ward of the court pursuant to the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1994)). The petition alleged that K.A. had committed the following offenses: unlawful possession of a controlled substance for knowingly and unlawfully possessing less than 15 grams of a substance containing cocaine (720 ILCS 570/402(c) (West 1994)); unlawful delivery of a controlled substance for knowingly and unlawfully possessing with the intent to deliver less than one gram of a substance containing cocaine (720 ILCS 570/401(d) (West 1994)); unlawful possession of a controlled substance for knowingly and unlawfully possessing more than 15 but less than 100 grams of a substance containing cocaine (720 ILCS 570/402(a)(2)(A) (West 1994)); and unlawful delivery of a controlled substance for knowingly and unlawfully possessing with the intent to deliver more than 15 but less than 100 grams of a substance containing cocaine (720 ILCS 570/401(a)(2)(A) (West 1994)). The trial court subsequently issued an order of adjudication finding K.A. to be a delinquent minor for committing the charged offenses and issued a dispositional order revoking K.A.'s probation and committing K.A. to the juvenile division of the Department of Corrections. K.A. appeals.

On appeal, K.A. argues that the evidence was insufficient to find him guilty beyond a reasonable doubt on any of the counts of unlawful possession of a controlled substance and unlawful possession of a

controlled substance with the intent to deliver. In addition, K.A. contends that the trial court committed errors during K.A.'s dispositional hearing. We reverse.

Testimony at the adjudicatory hearing revealed the following facts. Detective Joe Vincere testified that at approximately 12:10 p.m. on November 1, 1994, several members of the Rockford police department metro narcotics unit executed a search warrant at 313 South Fourth Street. The building at that address was a two-story dwelling containing three or four apartments. The search warrant was executed in a lower apartment.

Detective Vincere knocked on the rear door of the apartment and announced his office. He received no verbal response but heard some type of movement within. At that point, an officer used a battering ram to force open the door.

Detective Vincere was the first officer to enter the apartment. Detective Vincere immediately observed K.A. and Myron Taylor running in the living room toward the front door. K.A. exited the apartment behind Myron but stopped on command after about 40 yards. Myron continued running, was caught, and was returned to the apartment.

Detective Vincere estimated that, when he first observed K.A. and Myron, they were between one foot to three feet away from a McDonald's box under which cocaine was later discovered and five to six feet away from a closet in which cocaine was later discovered in a hole in the floor. The closet was located between the kitchen and the living room.

Detective Vincere testified that K.A. and Myron told him at the scene that they were visiting the apartment. Detective Vincere also testified that K.A. later told him that Myron had told him to go to the apartment the evening before the raid and that he had arrived at the apartment at about 11:45 a.m. to smoke a joint and listen to some music. K.A. explained that he ran because he was afraid. K.A. denied any knowledge of narcotics within the apartment.

Detective Vincere also testified that no cannabis was recovered in the apartment or on K.A. In addition, Detective Vincere admitted on cross-examination that no scales or cutting agents were recovered and that K.A. did not have a key to the apartment.

Detective Vincere further testified to the condition of the interior of the apartment. The apartment contained some McDonald's boxes in a garbage bag, an empty refrigerator, no furniture, except for a kitchen chair and some cushions, and no clothing. He did not recall observing any type of device to play music. He did not observe any indications that someone was staying in the apartment on a regular

basis and no documents were located regarding the tenancy of the apartment.

Detective Vincere also testified that the apartment had been raided on three previous occasions within the last four months. The apartment was also under surveillance earlier in the morning prior to the November 1, 1994, raid. K.A. was never observed on any of the prior occasions or on the morning of the raid. Different people were present in the apartment on each occasion.

According to Detective Vincere, the rear door of the apartment was in bad condition from the previous raids. Although the door could be shut and locked, it was not very sturdy, meaning that anyone could enter the apartment through that door.

Detective Mark Welsh's testimony corroborated Detective Vincere's testimony regarding the interior of the apartment. According to Detective Welsh, the apartment was basically vacant of any furniture, food, or clothing, and it appeared no one lived there. He did not observe any machine capable of playing music. Detective Welsh did observe garbage, such as McDonald's boxes, around the apartment.

Detective Welsh also testified that he found a McDonald's box opened up and facing down in the living room. Under the box, Detective Welsh found 10 corners of clear plastic bags which contained an off-white, rock-like substance later identified as cocaine. In a hole in the floor of the closet, Detective Welsh also found two bags, each tied in a knot and containing several smaller corners of clear plastic bags with an off-white, rock-like substance later identified as cocaine. The closet was located between the kitchen and the living room about six to eight feet from the McDonald's box. There were a total of 87 smaller corners of plastic bags.

Detective Welsh admitted on cross-examination that he could not determine what was located under the McDonald's box without turning it over. Detective Welsh also admitted that the closet door was closed, but not locked, and that the kitchen cupboard doors were closed.

In the kitchen cupboards, Detective Welsh observed a large quantity of plastic bags with the corners cut off. The narcotics found in the apartment were wrapped in what appeared to be corners cut from plastic bags. Detective Welsh did not observe any drug paraphernalia, nor did he find any cannabis within the apartment or on K.A. or Myron.

Detective Welsh searched K.A. and found $140 in United States currency in his front pant pocket. K.A.'s mother testified that a few days before November 1, 1994, she gave K.A. $140 so he could buy some clothes.

K.A. testified that Myron told him to go to the apartment and that he arrived at about 11:45 a.m. K.A. knocked on the front door and Myron let him in. Myron was already in the apartment when K.A. arrived. K.A. spent most of his time in the living room without looking around the apartment. K.A. observed a television, some cushions, a boom box, some tapes, and some garbage in the apartment.

K.A. testified that he was listening to music for about 15 minutes when he heard an unusual sound coming from the back door. K.A. then observed the back door caving in and when he turned around he saw Myron unlocking and running out the front door. K.A. then followed Myron out the front door but stopped on command of the police.

K.A. did not think that Myron lived at the apartment but thought one of Myron's relatives lived in the apartment. K.A. testified that he had never been to the apartment before.

■ At an adjudicatory hearing to determine whether a minor is delinquent, the State must prove the elements of any substantive offense alleged in a delinquency petition beyond a reasonable doubt. *In re W.C.*, 167 Ill. 2d 307, 336 (1995). "The standard of review in determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *In re W.C.*, 167 Ill. 2d at 336.

■ To establish the elements of unlawful possession of a controlled substance, the State must prove the defendant's knowledge of the possession of the controlled substance and that the controlled substance was in the defendant's immediate and exclusive control. *People v. Frieberg*, 147 Ill. 2d 326, 360 (1992). Possession may be actual or constructive. *Frieberg*, 147 Ill. 2d at 361.

■ In the instant case, K.A. was clearly not in actual possession of a controlled substance, and the State does not make such a claim. Rather, the State contends that K.A. was in constructive possession of a controlled substance. Constructive possession exists without actual personal present dominion over a controlled substance, but with an intent and capability to maintain control and dominion. *Frieberg*, 147 Ill. 2d at 361. Constructive possession may be inferred from the defendant's exclusive control of the premises where narcotics were found. *People v. Butler*, 242 Ill. App. 3d 731, 733 (1993). Once it is established that narcotics were found on premises under the defendant's control, it may be inferred that the defendant had the requisite knowledge and possession for a conviction of possession of a controlled substance, absent other facts and circumstances that might

leave a reasonable doubt as to guilt in the minds of the jury. *Trieberg*, 147 Ill. 2d at 361.

Here, the narcotics were found in the apartment occupied by K.A. during the raid. The mere presence in the vicinity of contraband, however, cannot establish constructive possession. *People v. Adams*, 242 Ill. App. 3d 830, 832 (1993). Nonetheless, where other circumstantial evidence is sufficiently probative, proof of proximity combined with inferred knowledge of the presence of contraband will support a finding of guilt on charges of possession. *People v. Brown*, 277 Ill. App. 3d 989, 998 (1996).

■ In the instant case, there is a reasonable doubt, in light of the evidence when viewed as a whole, that the apartment where the drugs were found was under K.A.'s exclusive control. As a result, it cannot be inferred that the narcotics were in his constructive possession.

The record contains no evidence to prove that K.A. owned, rented, or resided in the apartment where the narcotics were found. One way to prove the necessary control over the premises is to show that the defendant lived there. *People v. Lawton*, 253 Ill. App. 3d 144, 147 (1993). The State presented no evidence of rental receipts, utility bills, or clothing to show that K.A. lived in the apartment. See *Lawton*, 253 Ill. App. 3d at 147. Additionally, K.A. denied residing at the apartment, and Detective Vincere admitted the police were unable to find proof of tenancy for the apartment. Proof of residency, however, "has little if any relevance to the issue of control" when the dwelling is a "drug house." See *Lawton*, 253 Ill. App. 3d at 147-48.

A drug house is a dwelling not used primarily as a residence but instead as a center for the packaging and distribution of drugs, and typically it contains very little or no furniture, appliances, food, or clothing. See *Lawton*, 253 Ill. App. 3d at 147-48; *People v. Bond*, 205 Ill. App. 3d 515, 517 (1990). Detectives Vincere and Welsh both testified that the apartment contained very little furniture besides a chair and some cushions, no food, and no clothing. Neither observed any type of device to play music despite K.A.'s testimony that the apartment also contained a television and a radio. It appeared to both detectives that no one lived in the apartment. Thus, K.A. was present in a drug house at the time of the raid. As a result, the fact that K.A. did not own, rent, or reside in the apartment is not fatal to a finding that he controlled the apartment and therefore constructively possessed the drugs found therein. See *Lawton*, 253 Ill. App. 3d at 148.

Even though residence is not a major factor in determining control of a drug house, the State must still prove the defendant's

control over a drug house to establish constructive possession. For example, in *Lawton*, the evidence showed that the defendants admitted owning a key to the locked drug house, the cocaine was found in plain view in the drug house, and a field test showed the presence of cocaine on the defendants' hands. *Lawton*, 253 Ill. App. 3d at 148. Similarly, in *Bond*, a key to the drug house was found in the defendant's car, a scale found in the apartment was set to the precise weight of a bag of cocaine found in the defendant's car, and the defendant's fingerprints were found on a bottle of a substance used to dilute cocaine. *Bond*, 205 Ill. App. 3d at 517.

In this case, however, the State did not present any evidence of K.A.'s fingerprints on the narcotics or on any drug paraphernalia in the apartment. There was no evidence of drug paraphernalia, and the State presented no testimony to characterize the cut plastic bags as drug paraphernalia. In addition, there was no evidence of cocaine residue or any other drugs on K.A. Furthermore, the police never found a key to the apartment and there was no evidence that K.A. admitted owning a key to the apartment. In fact, K.A. testified that Myron was already in the apartment and let K.A. into the apartment when he arrived. Finally, the narcotics were not in plain sight; they were concealed. Detective Welsh testified that the narcotics under the McDonald's box and in the hole in the closet could not be seen.

Moreover, other factors that tend to prove a defendant's control of premises other than a drug house, but that would also be relevant in determining control of a drug house, were not present in this case. For instance, K.A. was not found in the presence of drugs in a secluded place. See *People v. Brown*, 277 Ill. App. 3d 989, 998-99 (1996) (finding defendant's control over secluded crawl space used to hide things). Instead, K.A. was first seen in an open living room. See *People v. Ray*, 232 Ill. App. 3d 459 (1992) (reversing convictions based upon constructive possession where defendants found sitting in living room on couch 18 inches from handgun, United States currency, and drugs).

In addition, the State presented no evidence to prove that K.A. was ever present at the apartment on any other prior occasion or that he frequently visited the apartment. See *Butler*, 242 Ill. App. 3d at 733 (finding constructive possession where, *inter alia*, defendant returned to premises on more than one occasion even though defendant had moved out of the house and no longer possessed a key to the bedroom where drugs were found); *People v. Valdez*, 230 Ill. App. 3d 975, 981 (1992) (finding evidence sufficient to support inference of control of residence where, *inter alia*, defendant was observed on approximately 20 occasions entering house and staying for considerable

periods of time). Detective Vincere testified that K.A. was never observed at the apartment during the three prior drug raids or during the surveillance of the apartment earlier in the morning, and K.A. denied ever being present at the apartment on any other occasion.

The State also presented no evidence to establish that K.A. kept any personal belongings in the apartment (see *Ray*, 232 Ill. App. 3d 459 (reversing convictions based upon constructive possession where, *inter alia*, no evidence that defendants kept clothing or other personal belongings in apartment)), or that K.A. was attempting to dispose of the narcotics (see *People v. Rouser*, 199 Ill. App. 3d 1062, 1065 (1990) (finding proof beyond a reasonable doubt of constructive possession where, *inter alia*, defendant was attempting to dispose of drugs)).

K.A. was also not present at the apartment for a significant amount of time prior to the raid. See *Brown*, 277 Ill. App. 3d at 999 (defendant present at apartment for several hours on day in question). At most K.A. was present in the apartment for 25 minutes, and he could have been present for as little as 15 minutes.

Moreover, K.A. was not alone when the police executed the search warrant. See *People v. Martine*, 121 Ill. App. 3d 793, 799 (1984) (evidence supported inference of possession where, *inter alia*, defendant was alone at home when police searched the premises), *rev'd on other grounds*, 106 Ill. 2d 429 (1985). Myron was also present during this raid. In addition, Detective Vincere testified that the apartment was basically available to anyone since the rear door was so fragile and other people did access the apartment as evidenced by the presence of different people during each of the prior raids.

Furthermore, the police found no contraband on K.A.'s person. See *People v. Minkin*, 133 Ill. App. 2d 549, 550 (1971) (reversing conviction of unlawful possession of narcotic drugs where, *inter alia*, no contraband was found on defendant's person). Detective Welsh testified that no cannabis was found on K.A. or in the premises, and there is no evidence in the record that any other contraband was found on K.A.

Finally, K.A. did not admit that he possessed or controlled the apartment. See *People v. Richard*, 34 Ill. App. 3d 621, 628 (1975) (finding possession not proved beyond reasonable doubt where, *inter alia*, defendant did not admit that he possessed or controlled the apartment); *People v. Nettles*, 23 Ill. 2d 306, 309 (1961) (finding trial court properly relied upon defendant's statement, as an admission, that anything found in apartment was his). On the contrary, K.A. specifically told Detective Vincere that he did not reside at the apart-

ment, that Myron told him to go to the apartment, and that he was there to smoke a joint and listen to some music. In addition, K.A. testified that he thought a relative of Myron's lived at the apartment.

The only factors tending to show K.A.'s control of the apartment are too weak when viewed in light of the overall circumstances. For example, even though K.A. was present when the police executed the search warrant (see *Valdez*, 230 Ill. App. 3d at 981 (defendant present during execution of search warrant)), presence alone is insufficient to prove control over premises (see *Minkin*, 133 Ill. App. 2d at 551). In addition, K.A. was in possession of $140, but his mother testified that she gave him the money. Finally, although K.A. fled from the scene, flight may only be considered along with other factors tending to establish guilt; flight by itself is not sufficient to establish guilt. *People v. Campbell*, 146 Ill. 2d 363, 388 (1992).

In sum, the record shows that the State only proved that K.A. was present in a drug house where the police found drugs and that K.A. fled the apartment. In light of the overall circumstances of this case, the State failed to prove beyond a reasonable doubt that K.A. exercised control over the apartment. Therefore, the State failed to prove K.A.'s possession of the narcotics beyond a reasonable doubt.

As a result of our ruling we need not consider the other contentions raised by K.A. The judgment of the circuit court of Winnebago County is reversed.

Reversed.

THOMAS and RATHJE, JJ., concur.