**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 160456-U

Order filed February 26, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-16-0456 Circuit No. 14-CF-929 |
| DEANTHONY T. PARKER, | ) ) ) | Honorable Walter D. Braud, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices McDade and O'Brien concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The court did not err in denying the defendant's motion to suppress. (2) Counsel was not ineffective for failing to challenge the warrant at trial. (3) The State proved the defendant constructively possessed the firearm beyond a reasonable doubt. (4) The court erred by failing to make a preliminary inquiry into the defendant's allegations of ineffective assistance of counsel.

¶ 2    The defendant, Deanthony T. Parker, appeals his conviction for unlawful possession of a weapon by a felon arguing, (1) the court erred in denying his motion to suppress evidence, (2) defense counsel was ineffective for failing to challenge the warrant during trial, (3) the

evidence was insufficient to prove his constructive possession of the gun, and (4) the court erred by failing to make a preliminary inquiry into his posttrial claims of ineffective assistance of counsel.

¶ 3                                                    I. BACKGROUND

¶ 4         On October 8, 2014, Rock Island police detective Brett Buchen sought two search warrants. The affidavit for the warrants averred that Corinna Shaffer was the victim of a robbery at her residence on September 27, 2014. Shaffer and a friend had met up with a couple of men at a bar. Shaffer and an unknown man went back to Shaffer's apartment. Shaffer gave the man a glass of something to drink. He then hit her in the face and held a box cutter or razor blade to her throat. The man demanded money and jewelry and ultimately took two suitcases and three bags of Shaffer's possessions. Shaffer made a list of the items stolen from her. Officers were able to pull latent fingerprints from the glass Shaffer had given the man, and five latent fingerprints were matched to the defendant. Shaffer was then shown a photographic lineup of six men and identified the defendant as the perpetrator. After the robbery, Shaffer's mother had given an area pawn shop a description of a Johnny Dang watch that was stolen. On October 6, 2014, Joswa Lewis took a similar watch to the pawn shop. An officer located Lewis and told him that the watch was stolen during a robbery. Lewis entered a residence at 1120 19th ½ Avenue, Rock Island, IL (the Rock Island residence) and retrieved the watch. Lewis told the officer that he had bought it from an unknown man at a car wash. The affidavit further stated,

> "[Buchen] checked [the defendant's] last known address in the Pistols Records
> Management System and learned that it was [the Rock Island residence]. [Buchen]
> checked with U.S. Federal Probation and learned that [the defendant's] address
> listed with them is 1622 15th Street A #1, Moline, IL 61265 [(the Moline

2

residence)]. [Buchen] checked with MidAmerican Energy Company and learned that service for [the Rock Island residence] is in the name of Pearline Morrow who is an Aunt to [the defendant] on his Mother's side of the family. [Buchen] checked with MidAmerican Energy Company and learned that service for [the Moline residence] is in the name of [the defendant]."

Based on this, Buchen believed there was probable cause to search both the Rock Island residence and the Moline residence for proceeds of the robbery. Buchen was granted search warrants for both residences.

¶ 5 In November 2014, the defendant was charged by information with unlawful possession of a weapon by a felon[1] (720 ILCS 5/24-1.1(a) (West 2014)). A preliminary hearing was held on February 10, 2015, and the defendant was represented by the public defender. Buchen testified regarding how the officers had discovered a handgun at the Moline residence. In doing so, he stated, *inter alia*, that the officers did not originally know where to find the defendant, but "just had addresses that he was related—that he was tied to through family and then *** through *** [the] Pistols system, and then also through *** federal probations as the address they had listed for him and what had been used by him when he had pawned items." On this point, Buchen stated that the defendant had used the Moline residence address "on August 13th of 2014 on a pawn record, and then he was also still listed as current through MidAmerican Energy as having that address." When the State asked where the defendant was "telling his federal probation officer he lived," Buchen stated, "What they had down was they had 1622 16th Street A, Apartment No. 1

---

[1]The defendant was charged with the robbery in a separate case not at issue here. See *People v. Parker*, 2019 IL App (3d) 160455.

3

but that was a bad address. I don't know if there was a typo or if they misunderstood when he told them that."

¶ 6     The defendant filed a motion to quash search warrant and suppress evidence on April 2, 2015, arguing that there was not a sufficient nexus between the Moline residence and the robbery to give rise to probable cause to search. On May 11, 2015, a hearing was held on the defendant's motion to suppress. Defense counsel argued that there was no allegation in the search warrant that contraband from the robbery would be found at the Moline residence, nor any allegation that the defendant went to the Moline residence directly after the robbery. Therefore, counsel stated there was no nexus with the robbery to support a search of the Moline residence. The court denied the motion, stating,

> "What would a reasonable police officer believe that a thief would do with stolen property *** that he took at three o'clock in the morning? Is there probable cause to believe that he would take it to his house, or hide it in his trunk, or secrete it behind his building, or put it in his mother's house? All of those things are reasonable, and I think there's a basis for search warrant to search those places."

¶ 7     The case proceeded to a bench trial on August 28, 2015. Robert Simmons testified that he was a landlord and owned the Moline residence. On June 27, 2014, he rented the Moline residence to the defendant. The defendant was the only person on the lease and no one else was supposed to reside there. Simmons stated that he did not see the defendant again after he signed the lease, but that one of his employees had collected rent from him a couple of times. Before renting out an apartment, Simmons and his employees would walk through the apartment, clean it, and dispose of anything left behind.

4

¶ 8    Detective Leo Hoogerwerf testified that he participated in the execution of the search warrant at the Moline residence on October 9, 2014, with Detective Richard Moritz and Sergeant Steven Metscaviz. Before they entered, a Special Weapons and Tactics (SWAT) unit entered the apartment to clear it. No one was in the apartment at the time. Hoogerwerf stated that it was a small, one-bedroom apartment that was sparsely furnished. In the bedroom closet there was a cardboard box with men's clothing in it. Hoogerwerf pulled back the top layer of clothing and found a Bryco .9-millimeter pistol. There was a round of ammunition in the chamber and bullets in the magazine of the pistol. Next to the box in the closet was a MidAmerican Energy bill addressed to the defendant at the Moline residence dated September 23, 2014. Hoogerwerf stated that some women's clothing was found in the living room on the floor.

¶ 9    After Hoogerwerf found the firearm and energy bill, Moritz testified that he then photographed the evidence, unloaded the gun, and bagged the firearm and energy bill. He gave the bagged evidence to the evidence technician, Garrett Alderson, for processing. Alderson did not find any fingerprints. Moritz stated that he discovered some women's clothing on hangers laying on the floor in the bedroom. Moritz described the clothing as "older and out of style."

The State asked the court to take judicial notice of a previous case in which the defendant had been convicted of aggravated battery, a felony. The State then rested.

¶ 10    Buchen testified for the defense that he obtained the search warrants for the Rock Island and Moline residences. He testified that he linked the defendant to the Moline residence, stating,

> "[The defendant] was on federal probation at the time of this investigation. In talking with his federal probation officer, I believe they had him listed at 1622-16th Street A, Apt. Number 1. I checked that with our dispatch to see if that was even a valid address to which they said that was not a valid address.

5

I checked pawn records on the LEADS Online system and saw that [the defendant] had made a pawn transaction at 1622-15th Street A, in Moline [(the Moline residence)]. I then also checked through Mid-American Energy for current service in which I was advised that [the defendant] had current service at [the Moline residence]. That's what directed us to that address for being his."

He connected the Rock Island residence to the defendant when the Johnny Dang watch was recovered from there. When the search warrant was executed on the Rock Island residence, the officers found the defendant, along with several items from the robbery and the clothing the defendant was suspected of wearing at the time were discovered.

¶ 11     The court found the defendant guilty of possession of a weapon by a felon. In doing so, the court noted that the defendant's "connect[ion] to [the firearm], [had] been established beyond a reasonable doubt with the indicia of residency, the lease, the fact that nobody else [was] there, clothing of the defendant."

¶ 12     Defense counsel filed a motion for a new trial, alleging the motion to suppress should have been granted and the evidence was insufficient to prove the defendant guilty. The defendant, independent of counsel, also filed a motion for a new trial, containing various allegations of ineffective assistance of counsel. A joint hearing was held on the posttrial motions for this case and the robbery case. Neither the court nor the defendant mentioned the defendant's ineffective assistance of counsel claims contained in the motion the defendant filed. The court denied the motion for a new trial. After a sentencing hearing, the defendant was sentenced to 12 years' imprisonment.

¶ 13                                II. ANALYSIS

¶ 14    On appeal the defendant argues: (1) the court erred in denying the motion to suppress the search warrant, (2) "counsel was ineffective for failing to challenge the warrant when the swearing investigator changed his story at trial," (3) the State failed to prove beyond a reasonable doubt that the defendant constructively possessed the gun, and (4) the court failed to conduct an inquiry into the defendant's allegations of ineffective assistance of counsel. We will consider each argument in turn.

¶ 15                    A. Motion to Suppress the Search Warrant

¶ 16    The defendant first argues that the court erred in failing to grant his motion to suppress the search warrant. We review a circuit court's decision regarding a motion to quash a search warrant and suppress evidence under a bifurcated standard of review. *People v. Pitts*, 2016 IL App (1st) 132205, ¶ 42. We will reverse the court's findings of fact only if they are against the manifest weight of the evidence, *i.e.* the findings of fact are unreasonable, arbitrary, or not based on the evidence presented. *Id.* We then review *de novo* the court's ultimate decision to deny or grant the motion to suppress. *Id.*

¶ 17    Probable cause to issue a search warrant exists "when the totality of the facts and circumstances within the affiant's knowledge at the time the warrant is applied for 'was sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched.' " *People v. Manzo*, 2018 IL 122761, ¶ 29 (quoting *People v. Griffin*, 178 Ill. 2d 65, 77 (1997)). "Whether the necessary probability exists is governed by commonsense considerations that are factual and practical, rather than by technical rules." *Manzo*, 2018 IL 122761, ¶ 30.

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him,

including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

¶ 18      When the search is of an individual's home, " '[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought.' " *Manzo*, 2018 IL 122761, ¶ 35 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). Stated another way, there must be a nexus between the place to be searched and the evidence sought. *Manzo*, 2018 IL 122761, ¶ 35. The magistrate may draw reasonable inferences from the information provided in the application for the search warrant and any "doubtful or marginal cases" should be resolved in favor of upholding the warrant. *Id.* ¶ 36. We will not substitute our judgment for that of the magistrate but must determine "whether the magistrate had a substantial basis for concluding that probable cause existed." *Id.* ¶ 31.

¶ 19      Here, Shaffer was the victim of a robbery, wherein a large number of her possessions were taken, so many that they necessitated two suitcases and three bags in order to be hauled away. The two search warrant affidavits stated that the defendant had been identified as the perpetrator of the robbery via fingerprints and a photographic lineup. The affidavits sought warrants to search both the Rock Island residence and the Moline residence. The Rock Island residence was (1) in the name of the defendant's aunt, (2) the defendant's last known address in the Pistols Records Management System, and (3) the location of the watch previously found. The Moline residence was listed as the defendant's address with U.S. Federal Probation and service with MidAmerican Energy was also in the defendant's name. Taking a practical and commonsense approach to the circumstances presented, it would be reasonable to infer that the defendant had hidden the property

8

that he had stolen very early in the morning at his own residence. From the information available to Buchen at the time, it appeared that the Moline residence was the defendant's home residence. Moreover, considering the number of possessions taken from Shaffer and the more than a week that elapsed between the robbery and the obtaining of the warrant, it is also reasonable to infer that the defendant may have spread the proceeds out between both the Rock Island residence, where the watch was originally found, and the Moline residence. Thus, the court did not err in denying the defendant's motion to suppress.

¶ 20   In coming to this conclusion, we reject the defendant's reliance on *People v. Rojas*, 2013 IL App (1st) 113780, for the proposition that the search warrant, here, was "bare-bones." In *Rojas*, the officer averring the warrant application opined that records of drug transactions were sometimes located at a dealer's residence. *Id.* ¶ 18. On appeal, the court found that the evidence that the defendant had committed any criminal drug activity "was minimal at best." *Id.* ¶ 20. Thus, the officer was solely speculating that the defendant had both committed criminal activity and that records of such activity would be found at his residence. *Id.* Here, Buchen had ample evidence that the defendant had committed the robbery. Based on that evidence and the circumstances surrounding it, he was able to infer that proceeds from the crime may be available at the Moline residence.

¶ 21                              B. Ineffective Assistance of Counsel

¶ 22   Next, the defendant argues that trial counsel was ineffective for failing to again challenge the warrant "when the swearing investigator changed his story at trial." The defendant contends that during trial "upon hearing this new information, counsel should have moved for a hearing pursuant to *Franks v. Del*[*a*]*ware*, 438 U.S. 154 (1978), to challenge the warrant."

9

¶ 23        To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that defense counsel's performance was deficient and (2) the deficient performance prejudiced the defendant to the extent that he was deprived of a fair proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[D]efense counsel's failure to file a motion to suppress does not establish incompetent representation, if the motion would have been futile." *People v. Brickhouse*, 2018 IL App (3d) 150807, ¶ 40.

¶ 24        Under section 5/114-12(a)(2) of the Code of Criminal Procedure of 1963 (Code), a defendant may move to suppress evidence obtained from an unlawful search and seizure on the grounds that, *inter alia*, "there was not probable cause for the issuance of the warrant." 725 ILCS 5/114-12(a)(2) (West 2014). In *Franks*, the Supreme Court held that one way a defendant may challenge this probable cause finding is by questioning the veracity of the sworn statement used by the police to procure the search warrant, stating that

>           "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-56.

However, section 5/114-12(c) of the Code also requires that any motions seeking to suppress evidence should be filed before trial unless the opportunity did not exist or the defendant was not aware of the grounds for the motion. 725 ILCS 5/114-12(c) (West 2014). Moreover, "[i]t is well established that in the absence of additional evidence or exceptional circumstances, the doctrine of collateral estoppel bars the relitigation of an order sustaining or denying a pretrial motion to

suppress evidence." *People v. Johnson*, 100 Ill. App. 3d 707, 708 (1981). Any "additional evidence must be evidence which has become available since the first hearing." *Id.* at 709.

¶ 25     Here, Buchen testified at trial,

> "[The defendant] was on federal probation at the time of this investigation. In talking with his federal probation officer, I believe they had him listed at 1622-16th Street A, Apt. Number 1. I checked that with our dispatch to see if that was even a valid address to which they said that was not a valid address.
>
> I checked pawn records on the LEADS Online system and saw that [the defendant] had made a pawn transaction at 1622-15th Street A, in Moline [(the Moline residence)]. I then also checked through Mid-American Energy for current service in which I was advised that [the defendant] had current service at [the Moline residence]. That's what directed us to that address for being his."

The defendant contends this was new information providing counsel another opportunity to challenge the warrant. However, the record shows that this was not the first time that Buchen provided this testimony. At the preliminary hearing (which happened before defense counsel filed the motion to suppress), when asked where the defendant told his federal probation officer he lived, Buchen stated, "What they had down was they had 1622 16th Street A, Apartment No. 1 but that was a bad address. I don't know if there was a typo or if they misunderstood when he told them that."

¶ 26     Thus, the evidence that the defendant argues provided the basis for, again, challenging the warrant at trial was already in the record prior to trial and did not amount to new evidence. Defense counsel knew, or should have known (particularly since the public defender's office represented the defendant at the preliminary hearing), that the federal probation officer told Buchen the

11

defendant's address was on 16th Street instead of 15th Street, and that it was through other investigating that Buchen concluded that was a mistake and 15th Street was the correct address. Because such evidence was available before trial, counsel would have had to file a motion prior to trial; challenging the warrant on this basis during trial would have been futile. See *supra* ¶ 23. Therefore, counsel was not ineffective for failing to move for a *Franks* hearing to challenge the warrant at trial. The defendant does not argue that counsel was ineffective for failing to raise such a motion prior to trial or include it in his first motion to suppress and has forfeited any such argument. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 27                                    C. Sufficiency of the Evidence

¶ 28        The defendant next contends that the State failed to prove him guilty beyond a reasonable doubt. When examining a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). A reviewing court will not substitute its judgment for that of the trier of fact regarding the weight of the evidence or witness credibility. *People v. Herring*, 2018 IL App (1st) 152067, ¶ 59.

¶ 29        Section 5/24-1.1(a) of the Criminal Code of 2012 states, in pertinent part,

> "It is unlawful for a person to knowingly possess on or about his person or *** in his own abode *** any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2014).

12

Therefore, in order to convict the defendant of unlawful possession of a weapon by a felon, the State had to prove the defendant (1) had a prior felony conviction and (2) knowingly possessed a firearm. *People v. Adams*, 388 Ill. App. 3d 762, 766 (2009). The defendant does not contend that the State failed to prove that he had a prior felony conviction. Therefore, the only question before us is whether the State proved that he knowingly possessed the firearm found in the Moline residence.

¶ 30        "No requirement exists that the offender possess the weapon in any particular place. [Citation.] Thus, the situs of the defendant's possession does not constitute a material element of the offense." *People v. Hester*, 271 Ill. App. 3d 954, 956 (1995). Possession may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). In this case, because the defendant was not found in actual possession of the firearm, the State had to prove that he constructively possessed it. "To establish constructive possession, the State must prove that the defendant: (1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area where the weapon was found." *People v. Faulkner*, 2017 IL App (1st) 132884, ¶ 39. "Evidence of constructive possession is 'often entirely circumstantial.' " *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003) (quoting *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002)). "The defendant's control over the location where weapons are found gives rise to an inference that he possessed the weapons." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Control can be established through evidence of habitation in the premises where the firearm was discovered. *Id.* "Proof of residency in the form of rent receipts, utility bills and clothing in closets is relevant to show the defendant lived on the premises and therefore controlled them." *People v. Lawton*, 253 Ill. App. 3d 144, 147 (1993). "Knowledge and possession are questions of fact to be resolved by the trier of fact, whose findings should not be disturbed upon review unless the evidence is so

13

unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of guilt." *People v. Luckett*, 273 Ill. App. 3d 1023, 1033 (1995).

¶ 31    Here, the evidence provided (1) the defendant was the sole name on the lease, (2) the landlord identified the defendant as the man who had filled out the application and signed the lease, (3) a utility bill for the Moline residence in the defendant's name was found in the bedroom, and (4) men's clothing was found in the bedroom closet that, a reasonable trier of fact could infer, belonged to the defendant. This evidence established the defendant's habitation of the Moline residence. Based on this, the defendant had control over the Moline residence and the inference arose that the defendant possessed the firearm. Taking the evidence in the light most favorable to the State, we cannot say that a finding that the defendant constructively possessed the firearm was "so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *Herring*, 2018 IL App (1st) 152067, ¶ 59.

¶ 32    We note that the defendant argues that the women's clothing found in the Moline residence "undercuts the State's case" because "the only reasonable [inference] one can draw from that is that others were in and had access to the premises." However, the mere access by others to an area where a weapon is found does not defeat a charge of constructive possession. See *People v. Miliam*, 224 Ill. App. 3d 642, 647 (1992). Even with the women's clothing, the evidence was sufficient to find that the defendant constructively possessed the weapon. Given the fact that the lease was only in the defendant's name and the landlord stated that no other person was allowed to reside there pursuant to the lease, a reasonable trier of fact could reject the proposition that the residence was controlled by some unnamed woman. Moreover, even if a woman did live there with the defendant, "[t]he rule that possession must be exclusive does not mean, however, that the possession may not

14

be joint. [Citations.] If two or more persons share the intention and power to exercise control, then each has possession." *Givens*, 237 Ill. 2d at 335.

¶ 33                                  D. Preliminary *Krankel* Inquiry

¶ 34        Lastly, the defendant argues that the case should be remanded for a preliminary *Krankel* inquiry. When a defendant raises a posttrial claim of ineffective assistance of counsel, the circuit court must conduct an initial inquiry into those claims to determine if the claim shows possible neglect of the case and new counsel needs to be appointed to further develop the defendant's claim. *People v. Jolly*, 2014 IL 117142, ¶ 29 (citing *People v. Krankel*, 102 Ill. 2d 181 (1984)). To trigger this preliminary inquiry, a defendant must make a "clear claim asserting ineffective assistance of counsel, either orally or in writing." *People v. Ayres*, 2017 IL 120071, ¶ 18. A defendant's bare use of the words "ineffective assistance of counsel," without any further explanation, is sufficient to trigger this inquiry. *Id.* ¶ 24. Stated another way, the only thing the defendant has to do to necessitate a preliminary *Krankel* inquiry is bring the claim to the court's attention. *Id.* ¶ 21.

¶ 35        Here, the defendant clearly raised multiple ineffective assistance of counsel claims in the motion for a new trial that he filed as a self-represented litigant. This was all the defendant was required to do in order to trigger a preliminary *Krankel* inquiry. However, the record shows that the court did not address the defendant's ineffective assistance of counsel claims. The State "agree[s] that the trial judge did not discuss the ineffective assistance claims with defendant in any hearing of record." The court "erred in failing to conduct any inquiry into the factual basis of defendant's allegations. Thus, we remand this cause to the circuit court for a preliminary *Krankel* inquiry." *Ayres*, 2017 IL 120071, ¶ 26.

¶ 36        In coming to this conclusion, we reject the State's contention that the defendant abandoned his claims. Specifically, the State says, the

15

"defendant had ample opportunity to request such an inquiry in multiple hearings subsequent to raising his ineffective assistance claims in his *pro se* motion for a new trial. *** Defendant never requested such an inquiry, and he did not attempt to make an argument related to such claims though he could easily have done so."

The State thus "ask[s] this court hold that, where the trial judge does not conduct any inquiry into a defendant's ineffective assistance claims, the defendant cannot sit on his or her hands or stand mutely by during multiple subsequent hearings and then claim error on appeal." Our supreme court rejected a similar argument in *People v. Moore*, 207 Ill. 2d 68, 79 (2003), stating, "The State contends that defendant waived this issue when he and his trial counsel 'stood mutely and did nothing to request further inquiry.' This contention lacks merit." The court went on to state that a "defendant is not required to do any more than bring his or her claim to the trial court's attention, which the defendant did in this case." *Id.* We apply this reasoning here.

¶ 37    We further reject the State's claim that we need not remand for a preliminary *Krankel* inquiry because "the best course of action is for defendant to file a post-conviction petition where he can flesh out his constitutional claims." Our supreme court has made clear that the remedy for failing to conduct a preliminary *Krankel* inquiry is remand for such an inquiry to be had. See, *e.g.*, *Ayres*, 2017 IL 120071, ¶ 26; *People v. Patrick*, 2011 IL 111666, ¶ 45; *Moore*, 207 Ill. 2d at 81.

¶ 38                                    III. CONCLUSION

¶ 39    The judgment of the circuit court of Rock Island County is affirmed and remanded.

¶ 40    Affirmed and remanded.

16